**STATE of Minnesota, Appellant,**

v.

**Jamie Lee AUBID, Respondent.**

**No. C4–97–2004.**

Court of Appeals of Minnesota.

May 19, 1998.

Review Granted July 16, 1998.

Hubert H. Humphrey III, Attorney General, Catherine M. Keane, Assistant Attorney General, Marvin E. Ketola, Carlton County Attorney, Thomas H. Pertler, Assistant County Attorney, for appellant.

Mark D. Nyvold, Assistant State Public Defender, for respondent.

Considered and decided by AMUNDSON, P.J., and SHORT and MANSUR, JJ.

## OPINION

MARTIN J. MANSUR,* Judge.

In a first-degree murder prosecution, the state appeals two pretrial suppression orders

---

* Retired judge of the district court, serving as    judge of the Minnesota Court of Appeals by ap-

and a *Batson* challenge to its exercise of a peremptory strike. We affirm in part and reverse in part.

## FACTS

Responding to a call regarding an abandoned automobile protruding from a ditch, police officers discovered the body of 17–year–old Paul Antonich in the trunk. An autopsy indicated Antonich had been severely beaten and died of multiple gunshot wounds. Acting on an anonymous tip, police officers arrested John Alexander "Mike" Martin. Two days later, Mike Martin admitted he was involved and also implicated John Steven Martin, Lester Dale Greenleaf, Andrew Leo DeVerney, and Jamie Lee Aubid in the murder. The two Martins, Greenleaf, and DeVerney all gave statements to the police but Aubid made no statement.

Mike Martin told police that Greenleaf, DeVerney, Aubid, and he were riding in a car driven by John Steven Martin on the evening of August 28, 1996. While stopped at an intersection, the victim's car rear-ended them, but caused no damage. Martin and his four companions got out of their car, and Greenleaf and DeVerney struck the victim through his open car window. Then, Greenleaf and DeVerney got into the victim's car. Driving the victim's car, Greenleaf followed Martin's car, which carried the companions. Both cars stopped twice, so the companions could assault the victim. At the second stop, Aubid handed his gun to John Steven Martin, who shot the victim to death. The companions put the victim's body in the trunk, and John Steven Martin drove the victim's car into a ditch. The next day, the five men drove to an area beneath a bridge, where they threw the gun into Lake Superior. Mike Martin told the police that Aubid had possession of the murder weapon on the day before and the day of the killing.

Statements made by DeVerney, Greenleaf, and John Steven Martin corroborated those of Mike Martin. Greenleaf told police officers that the murder weapon belonged to Aubid. DeVerney stated Aubid had a gun on the day of the killing because he was angry with a friend who allegedly stole his marijuana. John Steven Martin reported Aubid held the gun and handed it to him when the group stopped for the second time, just before John Steven Martin shot the victim.

The five companions were charged with second-degree murder and later indicted for first-degree murder. After plea negotiations, Mike Martin pleaded guilty to second-degree murder in exchange for testifying in the prosecutions of the other four men. Martin's sentencing was postponed until prosecution of his co-defendants was completed. At their joint trial, DeVerney and Greenleaf testified in their own defense, and Mike Martin testified for the state. DeVerney and Greenleaf were convicted of aiding and abetting first-degree murder.

At Aubid's trial, Mike Martin is the only co-defendant expected to testify. John Steven Martin invoked his Fifth Amendment rights in anticipation of his own pending trial; DeVerney and Greenleaf state they will not testify. In a recent letter to Aubid, Mike Martin wrote, "[t]here is no way in hell I am going to ruin you, my brother. You will probably be the only one to walk." In a subsequent letter, Mike Martin wrote:

> Your family is like my own family. I couldn't bear it if they thought I was gonna turn on the true spirit of family. So don't go worrying so much about your trial because you have no control over it. I am gonna be there to see that no injustice will be done against you, my brother. I know John Lind real well. I don't want to get a hold of him until I know for sure that he will be your lawyer throughout this whole ordeal. He can make a name for his self. With my help he can beat this case against you.

In a third letter, Mike Martin wrote:

> Jamie, I love you, you're my kid brother and I want to be able to help you out in any way that I can. I hope that I am able to, because you got to much brains to sitting in a cage. Things are gonna work out for you. Just keep believing this in your heart. We must never discuss the case in our letters. Say nothing to nobody. I really don't think that it is just a coincidence that Ron Samson was in St.

pointment pursuant to Minn. Const. art. VI, § 10.

Louis Co. with me and all of a sudden, there he is in Carlton County with you.

In a letter responding to one from Mike Martin, Aubid wrote, "please don't testify against me and lie. I forbid it."

The trial court issued an order ruling that all testimony from the Greenleaf–DeVerney trial would be inadmissible. The court ruled provisionally, subject to later argument at trial, that only the self-inculpatory portions of the statements Greenleaf, DeVerney, and Mike Martin made to police would be admissible. The court later explained that any references to Aubid would be redacted from those statements before they were admitted. The court ruled, however, that prior statements by Mike Martin inconsistent with his trial testimony would be admissible for impeachment purposes. In a separate order, the trial court excluded certain evidence concerning Aubid's acquisition and use of the alleged murder weapon. The court ruled that the state had failed to give the required *Spreigl* notice of this evidence, had failed to present clear and convincing evidence of the *Spreigl* incidents, and had not shown that the evidence was relevant.

In the course of jury selection, the trial court sustained Aubid's *Batson* challenge to the prosecutor's peremptory strike of an African–American prospective juror. In an order filed after the state had filed this appeal, the trial court dismissed the entire jury panel.

## ISSUES

1. Has the state shown the trial court's rulings have critical impact?

2. Did the trial court clearly and unequivocally err by excluding the co-defendants' trial testimony?

3. Did the trial court clearly and unequivocally err by excluding the co-defendants' statements to the police?

4. Did the trial court clearly and unequivocally err in excluding *Spreigl* evidence?

5. Does the trial court's dismissal of the jury render the *Batson* issue moot?

## ANALYSIS

### I.

■ In a pretrial appeal, we will reverse a trial court's determination only if the state demonstrates clearly and unequivocally that the trial court erred in its judgment and this error will have a critical impact on the outcome of the trial. *State v. Joon Kyu Kim*, 398 N.W.2d 544, 547 (Minn.1987).

■ Aubid contends the state cannot show the trial court's rulings will have a critical impact on the outcome at trial. However, the state need not show that the exclusion of evidence completely destroys its case, but rather that it significantly reduces the likelihood of a successful prosecution. *Id.* at 551. The record shows: (1) the state has no physical evidence placing Aubid at the scene of the crime; (2) the state has presented tangible evidence that Mike Martin will deviate from his prior testimony and statements, and not implicate Aubid; and (3) Aubid has a close family relationship with Mike Martin. Under these circumstances, the state has established that excluding the out-of-court statements of Greenleaf and DeVerney would significantly reduce the likelihood of a successful prosecution.

### II.

■ The trial court excluded the out-of-court statements of co-defendants DeVerney and Greenleaf at their prior trial. The court ruled that the out-of-court statements were not made in furtherance of a conspiracy and were hearsay. The state argues that the out-of-court statements are admissible under the catchall exception to the hearsay rule, and thus that the trial court clearly erred in excluding them.

The catchall exception to the hearsay rule permits the admission of:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reason-

able efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Minn. R. Evid. 804(b)(5).

■ In determining whether an out-of-court statement has circumstantial guarantees of trustworthiness, a court must examine the totality of the circumstances, and in doing so look at:

> [T]he character of the witness for truthfulness and honesty, and the availability of evidence on the issue; whether the testimony was given voluntarily, under oath, subject to cross-examination and a penalty for perjury; the witness' relationship with both the defendant and the government and his motivation to testify before the grand jury; the extent to which the witness' testimony reflects his personal knowledge; whether the witness ever recanted his testimony; the existence of corroborating evidence; and the reasons for the witness' unavailability.

State v. Byers, 570 N.W.2d 487, 493 (Minn. 1997) (quoting State v. Stallings, 478 N.W.2d 491, 495–96 (Minn.1991)). However, that out-of-court statements were made under oath and subject to cross-examination is not enough to establish the degree of trustworthiness required for admission of hearsay under the catchall exception. Stallings, 478 N.W.2d at 495.

The record demonstrates that the trial testimony of DeVerney and Greenleaf (1) was made voluntarily under oath, was not recanted, and was not procured by a monetary reward; (2) implicated DeVerney and Greenleaf as accomplices who never sought to withdraw from the episode; (3) was mutually corroborative in many significant details; and (4) was subject to extensive cross-examination both by the state and by each other's counsel. Under these circumstances, we conclude the trial court clearly erred by failing to admit the trial testimony under the catchall provision. See Byers, 570 N.W.2d at 493 (out-of-court statements were admissible that were made under oath and subject to cross-examination and penalty for perjury, were voluntary, were not recanted, were not induced by a monetary reward, and were corroborated by the direct testimony of two eyewitnesses); State v. Keeton, 573 N.W.2d

378, 383 (Minn.App.1997), (out-of-court statements were admissible that were against penal interest, were made under oath and subject to cross-examination, were consistent with other statements, and were not recanted), review granted (Minn. Feb. 26, 1998).

■ Aubid argues that admission of the trial testimony of DeVerney and Greenleaf would violate his constitutional right to confrontation. The Confrontation Clause provides:

> In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him.

U.S. Const. amend. VI. However, the Confrontation Clause does not preclude admission of an out-of-court statement if admission of the statement is necessary, and the statement bears adequate indicia of reliability. State v. Roby, 463 N.W.2d 506, 509 (Minn. 1990). Because DeVerney and Greenleaf are unavailable due to their refusal to testify, their statements are necessary. See Byers, 570 N.W.2d at 494. In addition, the same guarantees of trustworthiness that rendered the prior testimony admissible under the catchall exception to the hearsay rule satisfy the requirements of the Confrontation Clause. See Idaho v. Wright, 497 U.S. 805, 822, 110 S.Ct. 3139, 3150, 111 L.Ed.2d 638 (1990) (holding that factors used in determining whether hearsay statements are sufficiently reliable to satisfy hearsay exceptions also apply to whether statements have sufficient guarantees of trustworthiness under Confrontation Clause). In determining whether the statements satisfy the Confrontation Clause, the court may not consider evidence that merely corroborates the statements but does not relate to the circumstances under which the statements were made. Id. at 822–23, 110 S.Ct. at 3150. We conclude, however, that the former testimony of DeVerney and Greenleaf bears sufficient guarantees of trustworthiness to satisfy the Confrontation Clause even without considering the degree to which it was mutually corroborative or corroborated by other evidence. We rely particularly on the fact that the former testimony was largely against DeVerney and Greenleaf's penal interest, and that the prosecution, as well as the co-defen-

dant, had full opportunity and motive to expose by cross-examination those parts of the testimony that were exculpatory or that attempted to shift blame to others.

### III.

■ The state also seeks reversal of the trial court's exclusion of portions of the statements made to police by DeVerney, Greenleaf, and John Steven Martin. The court ruled, although apparently subject to later reconsideration, that only the self-inculpatory parts of the statements would be admissible, and that all references to Aubid would be redacted. *See State v. Ford*, 539 N.W.2d 214, 227 (Minn.1995) (holding that only self-inculpatory aspects of hearsay statement, but not other parts of statement, are admissible under exception for statements against penal interest).

Unsworn, ex parte statements made during police questioning are considered inherently untrustworthy. *State v. Hansen*, 312 N.W.2d 96, 103 (Minn.1981). The circumstances of the statements given in this case support that presumption of unreliability. At 2:08 a.m. on September 1, 1996, police began taking Greenleaf's statement. They stopped when he requested a lawyer. At 2:26 a.m. on the same day, police took DeVerney's statement. DeVerney told police he was intoxicated. At 6:26 p.m. on the same day, Greenleaf withdrew his request for a lawyer, and police resumed their interview. At 11:36 p.m., police interviewed John Steven Martin, who said he was tired and groggy. None of the three was represented by a lawyer. Although their unsworn statements were broadly against penal interest, they were not made under circumstances ensuring their reliability. Given the totality of the circumstances, we conclude the trial court's decision to exclude portions of the statements to police was not clear error.

### IV.

■ The state further seeks reversal of the trial court's pre-trial exclusion of evidence as to how Aubid obtained the gun used to shoot the victim, and of Aubid's use of the gun in a previous robbery. In excluding the evidence, the trial court found the evidence was *Spreigl* "bad acts" evidence, and that the state's failure to give notice as required by

Minn. R.Crim. P. 7.02 rendered the evidence inadmissible. The court also concluded that the state failed to prove Aubid's participation in the incidents by clear and convincing evidence and failed to show that the incidents were relevant to the charged offense.

■ The prosecution must give the defendant notice of all additional offenses at or before the rule 11 omnibus hearing except:

> offenses for which the defendant has been previously prosecuted or those that may be offered in rebuttal of the defendant's character witnesses or as a part of the occurrence or episode out of which the offense charged against defendant arose.

Minn. R.Crim. P. 7.02. Other-crimes evidence is admissible without notice if it establishes motive. *See State v. Scruggs*, 421 N.W.2d 707, 715 (Minn.1988) (evidence that defendant participated in robbery admissible without notice in murder trial in which prosecution alleged defendant killed victim out of belief that victim gave information to police about defendant's role in robbery). At the omnibus hearing, however, the state agreed that Aubid did not obtain the gun with intent to use it on the victim, and thus the robbery evidence does not establish motive.

The state argues on appeal that the robbery evidence shows: (1) a general motive to shoot someone in the time period in which the kidnap-murder of the victim occurred; and (2) the "manner in which [he] obtained the contraband and intoxicants upon which he purports to base his defense of intoxication." Because these issues were raised for the first time on appeal and fail to provide Aubid with a motive for participating in any crime against Paul Antonich, we conclude the trial court correctly determined the state was required to give notice to introduce the evidence. *See State v. Grube*, 531 N.W.2d 484, 489 (Minn.1995) (holding that issues not raised before the trial court cannot be raised on appeal). We need not address whether the state has shown the bad acts by clear and convincing evidence or whether it would be admissible under the *Spreigl* analysis.

## V.

Finally, the state seeks review of the trial court's *Batson* decision regarding the state's exercise of a peremptory strike of a black prospective juror. When an event occurring during the pendency of an appeal renders a decision unnecessary, the appeal will be dismissed as moot. *Sprenger v. Jacobs,* 305 N.W.2d 747, 748 (Minn.1981). The trial court dismissed the jury after the state filed this appeal, so a decision is unnecessary. If the case presents a question that is capable of repetition, but likely to evade review, the appellate court may decide it. *McIntosh v. Davis,* 441 N.W.2d 115, 118 (Minn.1989). Although *Batson* questions continually recur, each must be decided on its own facts. *See State v. James,* 520 N.W.2d 399, 403 (Minn. 1994) (*Batson* issue of racial discrimination turns largely on evaluation of credibility). Because we do not issue advisory opinions, the *Batson* issue is moot.

## DECISION

The trial court clearly erred in excluding the prior trial testimony of Greenleaf and DeVerney. The trial court did not clearly err in excluding the statements to the police and the evidence relative to respondent's acquisition and possible use of the murder weapon. The *Batson* issue is rendered moot by the dismissal of the jury panel.

**Affirmed in part and reversed in part.**