STATE of Minnesota, Respondent,

v.

Jamie Lee AUBID, petitioner,

Appellant.

No. C4-97-2004.

Supreme Court of Minnesota.

April 8, 1999.

---

Mark D. Nyvold, Special Asst. State Public Defender, St. Paul, for appellant.

Michael A. Hatch, Attorney General, Catherine M. Keane, Asst. Attorney General, St. Paul, Marvin E. Ketola, Carlton County Attorney, Thomas H. Pertler, Asst. County Attorney, Carlton, for respondent.

## OPINION

LANCASTER, Justice.

This matter involves a pretrial appeal from an order issued by the Carlton County District Court that excluded from the upcoming murder trial of appellant, Jamie Lee Aubid, the testimony codefendants Lester Greenleaf and Andy Leo DeVerney gave at their own joint trial. The court of appeals reversed the trial court and held (1) the prior trial testimony of Greenleaf and DeVerney was admissible at Aubid's trial under the catch-all exception to the hearsay rule, and (2) admission of this testimony would not violate Aubid's Confrontation Clause rights. Aubid now seeks review before this court, contending the state did not meet its burden of proving the district court clearly and unequivocally erred when it excluded the codefendants' testimony. We conclude that the trial court did not clearly and unequivocally err when it refused to admit, in totality, the former trial testimony of the two codefendants. We therefore reverse the court of appeals, and remand this matter to the district court for proceedings consistent with this opinion.

On August 29, 1996, authorities responded to a call from a logger who had discovered a Toyota Tercel partially submerged in a drainage ditch near the Ditchbank Road in rural Carlton County. After the car was pulled from the ditch and identified as belonging to Larry and Mary Antonich of Two Harbors, authorities found the body of the Antonichs' son, 17-year-old Paul Antonich, in the trunk. The St. Louis County medical examiner determined Antonich's death resulted from multiple gunshot wounds inflict-

ed after Antonich had received a severe beating. Antonich was last seen alive the previous evening, leaving for home in his parents' Tercel from a youth group meeting at the Hermantown Community Church.

Based on information provided by a then-anonymous tip, police arrested John Alexander "Mike" Martin on August 31, 1996. In a statement given to police after his arrest, Mike Martin implicated himself, John Steven Martin, Andy DeVerney, Lester Greenleaf, and Aubid in the death of Antonich. Mike Martin told police that on the evening of August 28, 1996, John Steven Martin was driving the group around Duluth when Antonich rear-ended the car while it was stopped at a stoplight on Sixth Avenue and Ninth Street. According to Martin, the group got out of the car and Greenleaf and DeVerney began arguing with Antonich and assaulting him. After John Steven Martin suggested taking Antonich's car, Greenleaf shoved Antonich over and drove Antonich's car, following the other group members in the Grand Am. The group stopped in an area near Skyline Parkway and again assaulted Antonich. After getting back in the cars, both vehicles were driven to a rural area along Ditchbank Road in neighboring Carlton County.

Mike Martin told authorities that once the group arrived at the Ditchbank Road location, the other four members of the group got out of the cars. Mike Martin stated that after Aubid, Greenleaf, and DeVerney brought Antonich up to a standing position, John Steven Martin took a .22 caliber gun from Aubid and shot Antonich four times in rapid succession. After Greenleaf and DeVerney wiped the Tercel clean, the group loaded Antonich's body into the trunk of the car and attempted to submerge Antonich's car in the drainage ditch. The group then returned in the Grand Am to Duluth. Mike Martin stated he went with the group early the next morning to an area under a bridge along Lake Superior and attempted to dispose of the gun by putting it in a white sock and throwing it into the water. Authorities later retrieved the gun after an extensive search and confirmed that the gun produced markings consistent with those found on the bullets that were recovered from the site of the murder.

The other four codefendants were subsequently taken into police custody. Greenleaf, DeVerney, and John Steven Martin all provided statements that substantially corroborated Mike Martin's previous statements, at least with respect to Aubid's participation in the incident. The five men were indicted by a grand jury for first-degree murder. Mike Martin pleaded guilty to second-degree murder in exchange for testifying against the other four codefendants; his sentencing has been postponed until prosecution of the codefendants is complete.

In contrast to the other codefendants, Aubid has refused to make any statement regarding his involvement in Antonich's murder. Because no physical evidence directly ties Aubid to the murder, much of the potential evidence against Aubid consists of accounts of the incident provided by the other codefendants. Codefendants Greenleaf, DeVerney, and John Steven Martin have all appeared before the trial court in pretrial proceedings and indicated they will refuse to testify at Aubid's trial if called as witnesses.

That leaves Mike Martin, Aubid's brother-in-law, as the only codefendant willing to testify at Aubid's trial to recount Aubid's involvement in the murder. Although Mike Martin agreed to testify against the other codefendants as part of his plea agreement, the state has expressed concerns that Martin will tailor his testimony at Aubid's trial in a manner that will downplay Aubid's active participation in the murder. First, the state argues that Martin's testimony at his plea hearing was lacking in details regarding Aubid's actions during the evening in question. Second, the state points to correspondence between Mike Martin and Aubid since their incarceration. In these letters, Martin has assured Aubid that: "[t]here is no way in hell I am going to ruin you, my brother. You will probably be the only one to walk." In another letter, Martin wrote:

> I couldn't bear it if they thought I was gonna turn on the true spirit of family. So don't go worrying much about your trial because you have no control over it. I am

gonna be there to see that no injustice will be done against you, my brother.

Martin assured Aubid on another occasion that:

Jamie, I love you, your [sic] my kid brother and I want to be able to help you out in any way that I can. I hope that I am able to, because you got to [sic] much brains to [be] sitting in a cage.

Aubid has also made reference to the trial in correspondence sent to Mike Martin. Aubid implored Martin in one letter to "[k]eep your head up, and please don't testify against me and lie. I forbid it. Don't ruin me bro * * *."

In an effort to supplement the testimony of Mike Martin, the state sought admission of the former trial testimony Greenleaf and DeVerney gave at their joint trial, at which each was convicted of first-degree murder.[1] During their testimony, both defendants deflected responsibility for the murder onto the other codefendants. Greenleaf testified he did not specifically recall hitting Antonich during the original confrontation between the codefendants and the victim at the intersection of Sixth Avenue and Ninth Street. Both Greenleaf and DeVerney indicated they thought Antonich had agreed to let Greenleaf drive the Tercel and follow behind the others in the Grand Am so they could retrieve automobile insurance papers from the house of one of John Steven Martin's parents. Greenleaf claimed he attempted to stop the second beating of Antonich that occurred near Skyline Parkway, alleging he stood over Antonich in a protective manner and told the others to "knock that * * * off."

Greenleaf further testified that he felt he would be killed if he did not comply with John Steven Martin's order that the group "take [Antonich] and shoot him" because Martin was brandishing Aubid's .22 caliber firearm in a threatening manner and "looked crazy." Greenleaf and DeVerney asserted that after the group arrived at Ditchbank Road, they were sitting in the Tercel and Grand Am, respectively, at the time the other three individuals executed Antonich. Both also related that they jumped out of the cars after they heard the gunshots and expressed surprise and anger to the other codefendants over the murder. Greenleaf testified that John Steven Martin later threatened the other group members that if they did not keep the murder a secret, "somebody was gonna die."

Greenleaf and DeVerney both testified that Aubid was more culpable than they were. Both codefendants testified that they witnessed Aubid assaulting Antonich when the group stopped near Skyline Parkway. Both also testified that Aubid and John Steven Martin were the two codefendants who discussed how to dispose of the murder weapon. According to Greenleaf, Aubid was standing outside with the Martins when the victim was shot, and helped place the body in the trunk of the Tercel.

DeVerney testified that when he jumped out of the Grand Am after the shooting, he asked either John Steven Martin or Aubid "[w]ho did this?" According to DeVerney, Aubid responded "[w]e all did this." DeVerney also recalled seeing Aubid throw the gun into Lake Superior.

The trial court issued an order ruling that Greenleaf's and DeVerney's trial testimony was inadmissible at Aubid's trial, holding it was hearsay that did not fall under the catchall exception for unavailable declarants, Minnesota Rule of Evidence 804(b)(5). The trial court further held that admission of the testimony would violate Aubid's right of confrontation under the federal and state constitutions. Although the trial court order states that "all" testimony from the Greenleaf/DeVerney trial would be inadmissible, the memorandum accompanying the order implies that perhaps the self-inculpatory portions of Greenleaf's and DeVerney's testimony would be admissible as statements against interest under Minnesota Rule of Evidence 804(b)(3).[2]

---

1. Both convictions are presently before us on appeal. *State v. Greenleaf*, 591 N.W.2d 488 (Minn.1999); *State v. DeVerney*, 592 N.W.2d 837 (Minn.1999).

2. In the same order, the trial court held that the self-inculpatory portions of the out-of-court statements given to police by the codefendants would be admissible for substantive purposes at trial. When discussing the former trial testimony of

The state commenced a pretrial appeal from this and other evidentiary rulings. The court of appeals reversed the trial court with respect to Greenleaf's and DeVerney's former trial testimony. *State v. Aubid,* 578 N.W.2d 784 (Minn.App.1998). The court of appeals held the totality of the former trial testimony should have been admitted under the catch-all exception to the hearsay rule. *Id.* at 788. It also held that admission of the trial testimony would not violate Aubid's constitutional right to confrontation. *Id.*[3] Aubid now appeals the decision of the court of appeals overturning the trial court's exclusion of the trial court testimony.[4]

Standard of Review

■ In a pretrial appeal, the state must demonstrate (1) the trial court "clearly and unequivocally erred" in its judgment, and (2) the error will have a "critical impact" on the outcome of the trial unless reversed. *State v. Joon Kyu Kim,* 398 N.W.2d 544, 547 (Minn.1987) (citing *State v. Webber,* 262 N.W.2d 157, 159 (Minn.1977)). A trial court's decision to exclude evidence constitutes error when it is an abuse of the trial court's discretion. *See State v. Byers,* 570 N.W.2d 487, 491 (Minn.1997); *State v. Edwards,* 485 N.W.2d 911, 915 (Minn.1992) (applying abuse of discretion standard in pretrial appeal of trial court decision excluding evidence as inadmissible hearsay not covered by catch-all exception). While trial courts have substantial discretion when making evidentiary rulings, defendants have a constitutional right to confront the witnesses against them. *See State v. Jones,* 556 N.W.2d 903, 910 (Minn.1996).

I. Critical Impact

■ When considering pretrial appeals, we first determine the critical impact of an evidentiary ruling before deciding whether the order was made in error. *See State v.*

*Scott,* 584 N.W.2d 412, 416 (Minn.1998). The critical impact standard is "necessarily a demanding standard." *State v. Zanter,* 535 N.W.2d 624, 630 (Minn.1995). However, "the critical impact rule does not require that the suppression order render the available proof insufficient as a matter of law, or so weak as to effectively destroy a successful prosecution." *State v. Edrozo,* 578 N.W.2d 719, 723 (Minn.1998). Instead, "the standard for critical impact is that 'the lack of the suppressed evidence significantly reduces the likelihood of a successful prosecution.'" *Id.* (quoting *Joon Kyu Kim,* 398 N.W.2d at 550–51).

■ By virtue of narrowing in the petitions for review, only one evidentiary ruling is properly before us: whether the jury should learn the contents of the testimony Greenleaf and DeVerney gave at their trial. Every criminal defendant has an absolute right not to testify at his trial. *See* U.S. Const. amend. V; Minn. Const. Art. I, § 7. At the outset, the state could not have had any expectation that the evidence now at issue would develop. Nevertheless, after careful review of the evidence available to the state, we conclude the state has met its burden of establishing critical impact. Exclusion of the former trial testimony would reduce the likelihood of a successful prosecution of Aubid. No physical evidence exists to directly tie Aubid to the murder. Mike Martin is the only witness to the murder available to testify; his prior testimony, coupled with the correspondence he has sent to Aubid since incarceration, casts into doubt the extent to which Mike Martin will be willing to testify about Aubid's actions the night of the murder. We will next determine whether the court of appeals correctly held that the trial court's exclusion of the codefendants' trial testimony constituted clear and unequivocal error.

Greenleaf and DeVerney, the memorandum accompanying the order states that "[s]ince the self-inculpatory statements are admissible under 804(b)(3) [statements against interest], no analysis under 804(b)(5) [catchall exception] is necessary."

**3.** The court of appeals affirmed the exclusion of all non-self-inculpatory portions of the state-

ments the codefendants gave to police. *Id.* at 789.

**4.** The state did not file a cross-petition seeking review of the court of appeals' decision affirming the exclusion of the codefendants' statements to police.

## II. Clear and Unequivocal Error

We recognize that evidentiary rulings are an area of the law where the trial court is accorded a significant amount of discretion. *See State v. Byers,* 570 N.W.2d at 492; *State v. Stallings,* 478 N.W.2d 491, 496 (Minn.1991). Neither the court of appeals nor this court may substitute its judgment for that of the trial court. Instead, review of evidentiary rulings must be limited to whether the trial court clearly and unequivocally erred in exercising its judgment. *See Joon Kyu Kim,* 398 N.W.2d at 547. Here, the three allegations of trial court error involve application of two hearsay exceptions—Minnesota Rules of Evidence 804(b)(3) (statement of an unavailable declarant which was against penal interest at the time it was made) and 804(b)(5) (the so-called catch-all exception for unavailable declarants)—and the Confrontation Clause of the Sixth Amendment to the United States Constitution and its counterpart in the Minnesota Constitution.

### A. Confrontation Clause

The Confrontation Clause of the Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." U.S. Const. amend. VI.[5] Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *See* Minn. R. Evid. 801(c). When hearsay is admitted in a criminal trial, it implicates the Sixth Amendment because the accused does not have an opportunity to cross-examine the person who made the statement. The Supreme Court has "consistently held that the Clause does not necessarily prohibit the admission of hearsay statements against a criminal defendant, even though the admission of such statements might be thought to violate the literal terms of the Clause." *Idaho v. Wright,* 497 U.S. 805, 813, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) (citing *Pointer v. Texas,* 380 U.S. 400, 407, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Mattox v. United States,* 156 U.S. 237, 243, 15 S.Ct. 337, 39 L.Ed. 409 (1895)).

On the other hand, the Confrontation Clause bars the admission of some evidence that would be admissible under an exception to the hearsay rule. *See Wright,* 497 U.S. at 814, 110 S.Ct. 3139.

The test for whether an out-of-court statement may be admitted into evidence at trial without violating a defendant's right to confront witnesses against him is whether the evidence is necessary and reliable. *See Byers,* 570 N.W.2d at 493 (citing *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). The necessity requirement is met if the declarant's "unavailability [is] due to his refusal to testify." *Id.* at 494. Greenleaf and DeVerney have thus far refused to testify even if found in contempt. Regardless of the reasons for the codefendants' refusal to testify, both parties agree that if Greenleaf and DeVerney persist in their refusal they are unavailable for Confrontation Clause purposes.

The reliability requirement under the Sixth Amendment can be satisfied if the proffered hearsay falls within an exception to the hearsay exclusion. In *White v. Illinois,* the Supreme Court said:

> [W]here proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied. * * * To exclude such probative statements under the strictures of the Confrontation Clause would be the height of wrongheadedness, given that the Confrontation Clause has as a basic purpose the promotion of the "integrity of the factfinding process" * * * [A] statement that qualifies for admission under a "firmly rooted" hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability.

502 U.S. 346, 356–57, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (internal citations omitted).

Under the rules of evidence, hearsay may also be admissible under exceptions that are not "firmly rooted." For example, in recognition of the fact that not all circumstances

---

**5.** Analysis of whether a defendant's right to confrontation has been protected is the same under both the federal and state constitutions. *See State v. Dukes,* 544 N.W.2d 13, 19 (Minn.1996).

can be predicted and codified, the hearsay rules provide exceptions for exclusion commonly referred to as the "catch-all" exceptions. These exceptions make hearsay admissible if it is more probative on the point for which it is offered than any other evidence procurable through reasonable efforts and if it is cloaked with guarantees of trustworthiness equivalent to those contained in the specifically delineated exceptions. *See* Minn. R. Evid. 804(b)(5) (catch-all exception for statements from unavailable declarants). The flexibility provided by the "catch-all" exceptions coordinates with the admonition contained in Minn. R. Evid. 102 that the rules shall be construed to promote the "growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." Minn. R. Evid. 102. With this in mind, we have set forth standards appropriate to the consideration of such hearsay. *See State v. Byers,* 570 N.W.2d at 492–93 (Minn. 1997); *State v. Stallings,* 478 N.W.2d at 495–96.

▆▆▆▆ Admissible hearsay that does not fall within a "firmly rooted" exception may sometimes be admitted without violating the Confrontation Clause. However, the constitutional protections of the Sixth Amendment require that the out-of-court statement be supported by "particularized guarantees of trustworthiness," which can be drawn from the "totality of the circumstances." *Wright,* 497 U.S. at 819, 110 S.Ct. 3139. The "totality of circumstances" considered for Confrontation Clause purposes are only those surrounding the making of the statement and that "render the declarant particularly worthy of belief." *Id.* In *Idaho v. Wright,* the Supreme Court declined to "endorse a mechanical test" for what factors may be considered under the totality of circumstances, and noted that "courts have considerable leeway in their consideration of appropriate factors." *Id.* at 822, 110 S.Ct. 3139.

▆▆▆▆ *Wright* involved a trustworthiness analysis of a young child's revelation of abuse as told outside the courtroom setting.[6] The

Supreme Court has yet to address, post-*Wright,* the extent to which the fact that a prior statement was given in court and was subject to cross-examination means that it was given under circumstances that render the declarant particularly worthy of belief. We believe that prior sworn statements, like prior unsworn statements, are not subject to a mechanical test, and that the trial court has considerable discretion to consider appropriate factors.

In reviewing the totality of circumstances for purposes of applying the Confrontation Clause, the court of appeals emphasized that it placed significance on the fact that the codefendants' prior testimony was given under oath and subject to cross-examination. *Aubid,* 578 N.W.2d at 788; *see Byers,* 570 N.W.2d at 494 (emphasizing facts that statement was cross-examined and given under oath were important indicia of reliability); *State v. Hansen,* 312 N.W.2d 96, 102 (Minn. 1981) ("Statements which are made under oath and subject to cross-examination may be sufficiently reliable to protect the values associated with the confrontation clause.").

▆▆▆▆ That a statement was made under oath and subject to cross-examination can be important in determining whether a statement carries sufficient guarantees of trustworthiness, but these factors are not determinative. *See Stallings,* 478 N.W.2d at 495. In this case in particular, the fact that the state could cross-examine the two codefendants during their trial would not necessarily guarantee the trustworthiness of their statements about Aubid's involvement. If the codefendants attempted to skew their testimony in an effort to deflect culpability for the actual murder away from themselves and onto Aubid, the state might have had less incentive to cross-examine that testimony vigorously, given the fact that the state was also prosecuting Aubid. The Supreme Court in *Wright* noted that statements admitted under the hearsay exceptions and Confrontation Clause are generally those considered so trustworthy that "adversarial

---

6. *State v. Edwards,* which also included a child sex abuse victim as the declarant, is an example of a rare case where we determined that it was clear error not to admit hearsay under the catch-all exception. 485 N.W.2d 911 (Minn.1992).

testing would add little to their reliability." 497 U.S. at 821, 110 S.Ct. 3139. Because of the state's limited incentive to challenge the codefendants' non-self-inculpatory statements implicating Aubid in the murder, it may not be true for these statements that "the test of cross-examination would be of marginal utility." *Id.* at 820, 110 S.Ct. 3139. Applying the trustworthiness test of *Wright* to the facts of this case, we cannot say that the trial court, in declining to admit the former testimony in its totality, clearly and unequivocally erred.

### B. Hearsay Rulings

The trial court's order is ambiguous on the question of whether the self-incriminating portions of the testimony would or would not be admitted. The order says, "testimony arising out of the previous trial of Lester Dale Greenleaf and Andy Leo DeVerney is inadmissible." However, the memorandum accompanying the order says: "Since the self-inculpatory statements are admissible under 804(b)(3), no analysis under 804(b)(5) is necessary." We assume that the trial court intended to admit the self-inculpatory portions of the testimony under rule 804(b)(3). That rule provides:

> Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: * * *
>
> Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability * * * that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Minn. R. Evid. 804(b)(3).

The United States Supreme Court provided recent guidance on the application of the identical federal rule in *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) (concluding that 804(b)(3) does not allow admission of non-self-inculpatory statements, even those made within a broader narrative that is generally self-inculpatory). In *State v. Jones*, we also cautioned against the wholesale admission of statements as against penal interest when the "overall testimony threw the bulk of the responsibility for the more serious offenses onto appellant." 556 N.W.2d at 909. Most recently we addressed the requirements of the rule in *State v. Keeton*, 589 N.W.2d 85 (Minn.1998) (holding trial court erred by admitting out-of-court statements as statements against interest without parsing out the noninculpatory portions of those statements).

Of course, even if the self-inculpatory portions are admissible under the rules of evidence, they still must pass muster under the Confrontation Clause before being admitted in Aubid's trial. As we have already noted, the trustworthiness requirement of the Confrontation Clause can be satisfied if a statement falls within a firmly rooted hearsay exception. A majority of federal circuit courts addressing the issue have held that the exception for statements against interest is "firmly rooted." *See* Daniel P. Shanahan & Damien J. Marshall, *The Sixth Amendment at Trial, in Twenty–Seventh Annual Review of Criminal Procedure*, 86 GEO. L.J. 1153, 1723 (1998).

Neither this court nor the United States Supreme Court has answered the "firmly rooted" question for rule 804(b)(3) statements one way or the other. *See Jones*, 556 N.W.2d at 908 (discussing *Williamson*). We have held that the self-inculpatory nature of statements is part of the totality of circumstances that contribute to their reliability for Confrontation Clause purposes. *See State v. Opsahl*, 513 N.W.2d 249, 254 (Minn.1994). We interpret the trial court's order to be that if there are any statements that fall squarely within 804(b)(3), they also meet the reliability standards for the Confrontation Clause and will be admitted. In this case, we cannot say that that constitutes clear error.

The record suggests that the trial court did not have an opportunity to complete its 804(b)(3) examination before trial because the state took this appeal. That careful examination of all the surrounding circumstances, which *Williamson* aptly describes as "fact-intensive," will be a task for the trial court on remand.

We read the trial court's order excluding testimony to apply only to testimony the state offered under the catch-all exception as opposed to the penal interest exception. In part, our reading is based on the trial court's citation of *California v. Green* (a case discussing the Confrontation Clause) when it purported to be addressing the hearsay exception. 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Because we hold that the trial court did not clearly and unequivocally err in excluding the non-self-inculpatory testimony under the Confrontation Clause, it is not necessary to separately address whether it meets the requirements of the catch-all exception.

In summary, we hold the court of appeals erred when it determined that the trial court clearly erred by not admitting the trial testimony in its entirety. The court of appeals' decision is reversed and this case is remanded to the district court for proceedings consistent with this opinion.[7]

Reversed and remanded.

PAGE, J., took no part in the consideration or decision of this case.

---

7. We do not intend to give the impression that only self-inculpatory statements may be admissible under the catch-all hearsay exception. Such a requirement would render the catch-all exception irrelevant, as self-inculpatory statements are already admissible under rule 804(b)(3). In this particular case, however, both the state and the court of appeals placed special emphasis on the self-inculpatory nature of portions of the declarants' statements as a central factor warranting admission of the trial testimony both under the catch-all exception and the Confrontation Clause.