De–Aunteze Lavion BOBO, Appellant,

v.

STATE of Minnesota, Respondent.

Nos. A11–0070, A11–1671.

Supreme Court of Minnesota.

Aug. 22, 2012.

Rehearing Denied Sept. 19, 2012.

De–Aunteze Lavion Bobo, pro se.

Lori Swanson, Attorney General, Saint Paul, MN, and Michael O. Freeman, Hennepin County Attorney, Elizabeth Johnston, Assistant County Attorney, Minneapolis, MN, for respondent.

## OPINION

GILDEA, Chief Justice.

Appellant De–Aunteze Lavion Bobo was convicted of first-degree murder while committing a drive-by shooting, Minn.Stat. § 609.185(a)(3) (2010), and drive-by shooting, Minn.Stat. § 609.66, subd. 1e (2010), for his role in a shooting that killed James Roberts and injured R.N. We affirmed Bobo's conviction on direct appeal. *State v. Bobo*, 770 N.W.2d 129 (Minn.2009). In this case, Bobo appeals the summary denial of his second petition for postconviction relief, which alleges a claim of ineffective assistance of appellate counsel, and his third petition for postconviction relief, which alleges a claim of newly discovered evidence. We affirm the postconviction court's summary denial of the second postconviction petition because the record conclusively shows appellate counsel was not ineffective. But we reverse the court's summary denial of the third postconviction petition and remand for an evidentiary hearing because the record fails to conclusively show that Bobo is not entitled to relief based on his claim of newly discovered evidence.

The facts surrounding the drive-by shooting are set forth in detail in *Bobo*, 770 N.W.2d at 133–35. We limit our discussion of the facts to those directly related to this appeal. At approximately 2:30 a.m. on June 2, 2006, James Roberts and R.N. were sitting in a parked car, waiting for their friend to finish his work day. As they waited, an SUV drove past their car and then made a U-turn. When the SUV drove by their car a second time, someone in the SUV fired multiple shots, killing Roberts and injuring R.N. The police initially had no suspects.

While executing an arrest warrant for Leonard Slaughter on unrelated charges, the police discovered the gun used in the June 2, 2006 shooting. Because Bobo was a known associate of Slaughter, the police began investigating Bobo. During the investigation, Bobo allegedly gave his cell phone number to the lead investigator, Sergeant Bruce Folkens. Phone records revealed that 5 minutes before the shooting, Bobo's cell phone triggered a cell tower one block from the crime scene. Slaughter's phone also triggered the same tower just before the shooting.

Folkens also learned that Samuel James (James) might have information about the shooting. Folkens subsequently met with James, who was in custody on an aggravated robbery conviction. James told Folkens that Bobo admitted telling Slaughter to shoot Roberts and R.N. because of a past altercation between Roberts, Slaughter, and Bobo.

After reviewing the State's evidence, which included testimony by James regarding Bobo's involvement in the shooting, a grand jury indicted Bobo with first-degree murder while committing a drive-by shooting. Bobo pleaded not guilty and demanded a jury trial.

At trial, Folkens testified about the police investigation. The State also called James as a witness, but he refused to answer the prosecutor's questions and repeatedly shouted that Bobo was innocent. On cross-examination, James said that his testimony to the grand jury was false, that Bobo never told him anything about the crime, that he only implicated Bobo to get a deal from the police, and that he had

received special considerations from the police after he agreed to testify against Bobo.

Bobo did not testify at trial and instead presented an alibi defense through Slaughter's mother, S.E., who testified that Bobo, the mother of his child, and their child were at her home in north Minneapolis during the time of the shooting. Bobo also presented an alternative perpetrator theory based on Folkens's investigation of M.S. Specifically, Roberts's son and M.S. had a girlfriend in common and, on at least one occasion, they had fought regarding the girlfriend.

In accord with the jury's verdict, the district court convicted Bobo of first-degree murder while committing a drive-by shooting and imposed a life sentence. The court also convicted Bobo of drive-by shooting and imposed a concurrent 98–month sentence.

Bobo appealed his conviction, but sought a stay of his direct appeal while he pursued a petition for postconviction relief in the district court. In a consolidated appeal, we affirmed Bobo's convictions and the postconviction court's denial of postconviction relief. *Bobo*, 770 N.W.2d at 133.

A year later, Bobo filed a second petition for postconviction relief. In his petition, Bobo claimed appellate counsel provided him ineffective assistance in his direct appeal. Bobo argued that appellate counsel was ineffective in part because she did not raise an ineffective-assistance-of-trial-counsel claim based on trial counsel's failure to assert a *Miranda* challenge to the cell-phone testimony.[1] The second postconviction petition also alleged a newly discovered evidence claim. The newly discovered evidence involved monies the police allegedly paid to James. In support of the second postconviction petition, Bobo signed a sworn affidavit stating that he asked trial and appellate counsel to raise issues relating to his cell phone number. Bobo also submitted a sworn affidavit from James stating that the police had provided James money, that Bobo never confessed to the crime, and that James was willing to testify to those facts. James signed the affidavit in 2010.

Without holding an evidentiary hearing, the postconviction court summarily denied Bobo's second postconviction petition. The court explained that the record conclusively showed that Bobo was not entitled to relief because the ineffective-assistance-of-appellate-counsel claim lacked merit and the newly discovered evidence was largely cumulative to James's trial testimony that he received special consideration for testifying against Bobo.[2]

Bobo appealed the summary denial of his second postconviction petition. He argued in part that Folkens obtained his cell phone number during a conversation that occurred after his arrest and detention, and that Folkens did not read him a *Miranda* warning during that conversation.

While his appeal from the denial of the second postconviction petition was pending, Bobo filed a third petition for postconviction relief. In his third petition, Bobo raised a single claim of newly discovered evidence. The newly discovered evidence involved post-trial confessions James alleg-

---

1. Bobo raised several other claims that are not relevant here because he did not renew those claims on appeal.

2. On appeal from the denial of his second petition for postconviction relief, Bobo does not contend that the postconviction court erred in denying him relief based on the newly discovered evidence claim.

edly made to fellow inmates J.C. and D.T. In a sworn affidavit, D.T. averred that in May 2009, James admitted he was with Slaughter on the day of the shooting and that he "put the case off on" Bobo just like he tried to do in another murder.[3] J.C. also signed a sworn affidavit stating that in 2008, James told J.C. that he lied when he implicated Bobo and that James was the one who committed the murder with Slaughter. Both affidavits state that James explained there had been a prior fight downtown and when James later saw one of the men involved in the fight, he made a U-turn and shot at the man. James also allegedly told both J.C. and D.T. that he did not want to put the case on Bobo, but that he really wanted to get out of jail and needed the money the police were offering. Both affidavits were executed just before Bobo filed the third petition, and Bobo alleged he did not know of the evidence contained in the affidavits before that time.

Without holding an evidentiary hearing, the postconviction court summarily denied Bobo's third postconviction petition. Although the court acknowledged James's post-trial confessions could not have been discovered earlier, the court concluded that the record conclusively showed that Bobo was not entitled to relief because the newly discovered evidence was both cumulative and inadmissible hearsay. More specifically, the court concluded that the newly discovered evidence was cumulative because James had testified at trial that Bobo was not responsible for the shooting. The court also concluded that James's hearsay statements were not admissible as a statement against interest under Minn. R. Evid. 804(b)(3) for two reasons. First, the statements were not against James's

penal interests because he was serving two consecutive 30-year sentences when he allegedly confessed to D.T. and J.C. Second, there were no corroborating circumstances to show that the statement was trustworthy because the evidence was brought forward by two felons years after the admissions were allegedly made and the admissions were inconsistent with James's 2010 affidavit. See Minn. R. Evid. 804(b)(3) (requiring corroboration when a statement is offered to exculpate the accused).

Bobo appealed the summary denial of his third postconviction petition, and we consolidated that appeal with his appeal from the summary denial of his second postconviction petition. As discussed below, we conclude that although the record conclusively shows that appellate counsel was not ineffective, the record fails to conclusively show that Bobo is not entitled to relief based on the newly-discovered-evidence claim.

## I.

Bobo argues the postconviction court committed reversible error when it failed to hold an evidentiary hearing on his claim that appellate counsel provided ineffective assistance when she did not raise an ineffective-assistance-of-trial-counsel claim based on trial counsel's failure to assert a *Miranda* challenge to the cell-phone testimony. We disagree.

 The evidentiary-hearing requirement in postconviction proceedings is set forth in section 590.04, subd. 1 which provides,

*Unless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no*

---

**3.** Folkens testified that James had accused someone else of committing another unsolved murder that Folkens was investigating, but that Folkens later discovered it was James who had actually committed that murder.

*relief,* the court shall promptly set an early hearing on the petition ... and promptly determine the issues, make findings of fact and conclusions of law with respect [to the petition], and either deny the petition or enter an order granting appropriate relief.

Minn.Stat. § 590.04, subd. 1 (2010) (emphasis added). An evidentiary hearing provides the postconviction court the means for evaluating the credibility of a witness. *Wilson v. State,* 726 N.W.2d 103, 107 (Minn.2007); *see also Opsahl v. State,* 677 N.W.2d 414, 423–24 (Minn.2004) (explaining that the postconviction court erred "[b]y concluding that the recantations were unreliable without first evaluating the credibility of the witnesses at an evidentiary hearing"). The showing required for an evidentiary hearing is lower than that required for a new trial. *Opsahl,* 677 N.W.2d at 423. Any doubts about whether to conduct an evidentiary hearing should be resolved in favor of the defendant. *Id.; Dobbins v. State,* 788 N.W.2d 719, 736 (Minn.2010). A postconviction court, however, need not hold an evidentiary hearing when the petitioner alleges facts that, if true, are legally insufficient to entitle him to the requested relief. *Spann v. State,* 740 N.W.2d 570, 572 (Minn.2007); *Leake v. State,* 737 N.W.2d 531, 535 (Minn.2007). We review a postconviction court's legal determinations de novo. *State v. Finnegan,* 784 N.W.2d 243, 247 (Minn.2010).

To receive an evidentiary hearing on a postconviction claim of ineffective assistance of appellate counsel, a defendant is required to allege facts that, if proven by a fair preponderance of the evidence, would satisfy the two-prong test announced in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See* Minn.Stat. § 590.04, subd. 3 (2010) (providing that the petitioner generally bears the burden of proving the facts alleged in the petition by a fair preponderance of the evidence). Under the first prong of the *Strickland* test, a defendant must show counsel's representation " 'fell below an objective standard of reasonableness.' " *Fields v. State,* 733 N.W.2d 465, 468 (Minn.2007) (quoting *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052). Appellate counsel has no duty to raise all possible issues on appeal, and may choose to argue "only the most meritorious claims." *Schneider v. State,* 725 N.W.2d 516, 523 (Minn.2007); *see also Wilson v. State,* 582 N.W.2d 882, 886 (Minn.1998) (explaining that an appellate counsel has "no duty to include claims which would detract from other more meritorious issues") (citations omitted) (internal quotation marks omitted). And there is a strong presumption that appellate counsel's judgment about which issues to raise "falls within the wide range of 'reasonable professional assistance.' " *Fields,* 733 N.W.2d at 468 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Under the second prong, a defendant must show that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052).

Here, Bobo alleges the following facts in support of his ineffective assistance of appellate counsel claim. Without reading Bobo a *Miranda* warning, Folkens obtained Bobo's cell phone number during a conversation that occurred after his arrest and detention. Trial counsel did not move to suppress Folkens's cell-phone testimony based on a *Miranda* violation. Appellate counsel did not argue that trial counsel was ineffective when counsel failed to assert a *Miranda* challenge to the cell-phone testimony. Even if true, the alleged facts are legally insufficient to establish that

appellate counsel's conduct fell below an objective standard of reasonableness.

■ It was not objectively unreasonable for appellate counsel to fail to raise a claim based on a *Miranda* violation because a *Miranda* warning is not required before police ask routine identification and biographical questions, like name, address, or telephone number. *See State v. Greenleaf,* 591 N.W.2d 488, 497 (Minn.1999) (noting that routine booking statements do not require *Miranda* warnings); *State v. Link,* 289 N.W.2d 102, 107 (Minn.1979) (stating that biographical questions do not require *Miranda* warnings); *State v. Widell,* 258 N.W.2d 795, 797 (Minn.1977) (explaining that routine booking questions relating to name, address, or other similar matters do not require a *Miranda* warning). Given that Bobo failed to allege facts that, if proven by a fair preponderance of the evidence, would satisfy the first prong of the *Strickland* test, the postconviction court did not err when it failed to hold an evidentiary hearing on his claim that ap-

pellate counsel was ineffective. We therefore affirm the court's summary denial of Bobo's second postconviction petition.

## II.

■ Bobo also argues that the postconviction court committed reversible error when it failed to hold an evidentiary hearing on the newly discovered evidence claim he asserted in his third petition for postconviction relief. We agree.[4]

■ As discussed above, there is no need for a postconviction court to hold an evidentiary hearing when a defendant alleges facts that, if true, are legally insufficient to entitle him to the requested relief. *Spann,* 740 N.W.2d at 572. To receive an evidentiary hearing on a timely postconviction claim of newly discovered evidence, a defendant is required to allege facts that, if proven by a fair preponderance of the evidence, would satisfy the four-prong test set forth in *Rainer v. State,* 566 N.W.2d 692 (Minn.1997).[5] Under the *Rainer* test,

4. The dissent contends that an evidentiary hearing is not required in this case because the postconviction court found that Bobo's new evidence was "profoundly doubtful." The dissent's contention fails to acknowledge that the postconviction court's conclusion is based on its determination that the new evidence—James's confession to the crime—lacks "trustworthiness." But the credibility of a witness depends on his or her "demeanor, disposition, and character," *Albertson v. Albertson,* 243 Minn. 212, 215, 67 N.W.2d 463, 466 (1954), and therefore a postconviction court should not make witness credibility determinations without first holding an evidentiary hearing. *Wilson v. State,* 726 N.W.2d 103, 107 (Minn.2007); *see also Opsahl v. State,* 677 N.W.2d 414, 423–24 (Minn. 2004) (explaining that the postconviction court erred "[b]y concluding that the recantations were unreliable without first evaluating the credibility of the witnesses at an evidentiary hearing"). Citing *Rainer v. State,* 566 N.W.2d 692, 695–96 (Minn.1997), the dissent contends that consideration of a witness's demeanor, disposition, and character is not nec-

essary when the newly discovered evidence is unreliable. The dissent's reliance on *Rainer* is misplaced. In *Rainer,* the defendant sought postconviction relief based on an anonymous letter alleging that a trial witness lied about the location of the gun and that the State tampered with the hammer of the gun. *Id.* at 695. Because the letter writer was anonymous, an evaluation of the writer's demeanor, disposition, and character was not possible in *Rainer.* That fact distinguishes *Rainer* from Bobo's case because in Bobo's case an evaluation of the witness's demeanor, disposition, and character is possible, especially when James has expressly averred that he is willing to testify at an evidentiary hearing.

5. Because Bobo's third petition was filed within the 2–year time limitation of Minn. Stat. § 590.01, subd. 4(a) (2010), Bobo need not meet the more demanding standard for newly discovered evidence set forth in Minn. Stat. § 590.01, subd. 4(b)(2) (2010), which requires that the evidence establish petitioner's innocence by a clear and convincing standard. Also, although James did recant his

a defendant is entitled to a new trial only if he proves the following. First, "the evidence was not known to the defendant or his/her counsel at the time of the trial." *Id.* at 695. Second, "the evidence could not have been discovered through due diligence before trial." *Id.* Third, "the evidence is not cumulative, impeaching, or doubtful." *Id.* Fourth, "the evidence would probably produce an acquittal or a more favorable result." *Id.*

Here, Bobo alleged the following facts in support of his newly discovered evidence claim. James spoke with J.C. and D.T. after the conclusion of Bobo's May 2007 trial. Bobo had no way of discovering James's role as the shooter at the time of trial. James told D.T. that James was with Slaughter on the day of the shooting and that he "put the case off on" Bobo just like he tried to do in another murder. James admitted to J.C. that he lied when he implicated Bobo and that James was the one who committed the murder with Slaughter. James separately explained to D.T. and J.C. that (1) there had been a prior fight downtown, that when James later saw one of the men involved in the fight, he pulled a U-turn, and then shot at the man, and (2) James did not want to put the case on Bobo, but that he really wanted to get out of jail and needed the money the police were offering.

The postconviction court acknowledged that if the alleged facts were proven by a preponderance of the evidence, they would satisfy the first and second prong of the *Rainer* test. Nevertheless, the court denied Bobo's request for an evidentiary hearing because, even if the alleged facts were true, they failed to satisfy the third

prong of the *Rainer* test for two reasons. First, the newly discovered evidence relating to James's alleged confession would be "cumulative on the only point for which it would be submitted in [Bobo's] trial: i.e., that someone else, not ... Bobo, was responsible" for the shooting. Second, the newly discovered evidence would be limited to impeachment because J.C. and D.T.'s statements regarding James's alleged confession did not satisfy any hearsay exception, including Minn. R. Evid. 804(b)(3) (the statement against penal interest exception). We consider the court's two reasons for denying ·an evidentiary hearing under the third prong of *Rainer* in turn.

A.

The State contends the postconviction court properly concluded that the newly discovered evidence was cumulative. In support of its contention, the State claims the evidence relating to James's alleged confession was merely an "additional detail" to James's trial testimony that Bobo did not commit the crime. We disagree.

 Evidence is not cumulative when "it [is] the only evidence offered on" an issue. *State v. Penkaty,* 708 N.W.2d 185, 203 (Minn.2006). Although Bobo presented evidence at trial that M.S. was responsible for the shooting, there was no evidence that James was responsible for the shooting or that someone other than Bobo had confessed to the crime. The identification of another specific person who allegedly confessed to the crime is not cumulative of Bobo's general claim of innocence or James's recantation at trial. This is especially true when identification was a central issue in Bobo's case. Indeed, the

grand jury testimony, the newly discovered evidence at issue here is James's admission to committing the crime, not his recantation. Thus, it is the *Rainer* test that should be applied here, not the three-prong test for re-

cantation evidence developed in *Larrison v. United States,* 24 F.2d 82, 87–88 (7th Cir. 1928), *overruled by United States v. Mitrione,* 357 F.3d 712, 718 (7th Cir.2004).

identification of a specific alternative perpetrator is an important, powerful, and distinct part of a defendant's constitutional right to present a complete defense. *See, e.g., State v. Ferguson,* 804 N.W.2d 586, 590–91 (Minn.2011). Because D.T. and J.C.'s statements regarding James's alleged confession are the only evidence on the issue of whether James was an alternative perpetrator, we conclude that the newly discovered evidence was not cumulative under the third prong of the *Rainer* test.

### B.

The State also contends that the postconviction court properly concluded that Bobo was not entitled to a postconviction evidentiary hearing because the affidavits submitted by D.T. and J.C. contained hearsay, and that therefore the affidavits

do not satisfy the third prong of the *Rainer* test.[6] We disagree.[7]

We squarely rejected an identical argument made by the State in *Dobbins v. State,* 788 N.W.2d 719, 736 (Minn.2010).[8] In *Dobbins,* the defendant presented a sworn affidavit from D.H. that averred that M.K. had "confessed to him that [M.K.] accidentally shot [the victim]." *Id.* at 733. The State argued that D.H.'s affidavit did not warrant an evidentiary hearing because it contained inadmissible hearsay—M.K.'s out-of-court confession to D.H. *Id.* at 736. In rejecting the State's argument, we explained that the State failed to consider "the possibility that [M.K.] could confirm his [confession] at an evidentiary hearing." *Id.* at 737.

▪ As in *Dobbins,* there is a possibility that James would confirm his alleged confession at an evidentiary hearing.[9]

---

**6.** "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted." *State v. Aubid,* 591 N.W.2d 472, 478 (Minn.1999); *see also* Minn. R. Evid. 801(c).

**7.** The dissent reaches the opposite conclusion based on a fundamentally different view of the factual record. The dissent's analysis is based on a belief that the record demonstrates that James will appear at an evidentiary hearing and deny any involvement in the murder. But any doubts about whether to conduct an evidentiary hearing are to be resolved in Bobo's favor. *See Dobbins,* 788 N.W.2d at 736; *Wilson,* 726 N.W.2d at 107; *Opsahl,* 677 N.W.2d at 423.

**8.** The dissent contends that our analysis of the State's argument in *Dobbins* is not controlling in Bobo's case because Dobbins claimed he was entitled to a new trial based on recanted testimony, not newly discovered evidence. We acknowledge that Bobo and Dobbins argued they were entitled to a new trial under tests that required different levels of impact on the verdict. Unlike Dobbins, who was required to show that in the absence of the recanted testimony the jury might have reached a different conclusion, Bobo is required to show that the newly discovered evidence would probably produce an acquittal or a more favorable result. But this distinction

is not relevant to our discussion. In both cases the *State* made the identical argument—the defendant was not entitled to a postconviction evidentiary hearing because the supporting affidavits contained hearsay. In *Dobbins,* we rejected the State's argument, not based on the possible impact of the affiant's statements on the verdict, but rather because there was a "possibility" that the hearsay declarant would appear at the evidentiary hearing and personally "confirm [the] recantation." 788 N.W.2d at 737.

**9.** The dissent argues that, unlike *Dobbins,* the record in this case indicates what James would say at an evidentiary hearing. James provided a sworn affidavit, which the dissent contends "indicates that [James] was not involved in the murder and only knew the details of the crime from talking with Bobo and the police." The dissent misreads the affidavit. Contrary to the dissent's characterization, James does not state in his affidavit that he was "not involved in the murder." In explaining how he was able to fabricate a convincing confession by Bobo, James stated that, "I knew what gun was used in the murder because Bobo showed me his discovery on his kidnapping case and in there was information about where the gun was found, type and number of people shot was all in his

This case therefore is unlike *Roby v. State*, 808 N.W.2d 20, 28 (Minn.2011), and *Riley v. State*, 819 N.W.2d 162, 169 (Minn.2012), where we upheld the denial of an evidentiary hearing because the hearsay declarant was dead.[10] In contrast to *Roby* and *Riley*, the facts and circumstances of Bobo's case do not conclusively eliminate the possibility that James would confirm his confession at an evidentiary hearing. This is especially true when the 2010 affidavit that James submitted in support of Bobo's second petition for postconviction relief states that James is willing to testify that Bobo is innocent. Consistent with *Dobbins*, we hold that the postconviction court erred when it concluded that because the affidavits submitted by D.T. and J.C. contained hearsay, Bobo was not entitled to a postconviction evidentiary hearing on the newly discovered evidence claim. 788 N.W.2d at 737 (remanding for evidentiary hearing).

The postconviction court assessed the fourth prong of the *Rainer* test based on its conclusion that James's alleged confession was cumulative and an assumption that James would not appear at an evidentiary hearing. However, as discussed above, James's alleged confession is not cumulative, and there is a reasonable possibility that James will appear at an evidentiary hearing. If, after an evidentiary hearing, the postconviction court finds that James's confession is credible, the confession could satisfy the fourth prong of the *Rainer* test. Because we cannot say that

the record conclusively establishes that Bobo is not entitled to relief, the postconviction court misapplied Minn.Stat. § 590.04, subd. 1, when it summarily denied Bobo's third petition for postconviction relief.

### III.

In sum, Bobo failed to allege facts in his second postconviction petition that, if proven by a fair preponderance of the evidence, would satisfy the first prong of the *Strickland* test. Therefore, the postconviction court did not err when it failed to hold an evidentiary hearing on the ineffective-assistance-of-appellate-counsel claim. We cannot say, however, based on the supporting affidavits of James, D.T., and J.C., that the record conclusively establishes that Bobo is entitled to no relief under the *Rainer* test. The postconviction court therefore erred when it failed to hold an evidentiary hearing on the newly discovered evidence claim asserted in Bobo's third petition for postconviction relief. For the reasons discussed above, we affirm the court's summary denial of the second postconviction petition, reverse the court's summary denial of the third postconviction petition, and remand for an evidentiary hearing on the claim of newly discovered evidence asserted in the third postconviction petition.

Affirmed in part, reversed in part, and remanded.

---

discovery." James further stated, "Sgt. Folkens provided me with where this murder happened at, and the color of the truck that was used." James does not aver that Bobo's discovery and Folkens's information were the sole source of his knowledge about the murder. In fact, James expressly states that his grand jury testimony was based on "information [he] received from Sgt. Folkens and some of [his] personal knowledge."

10. Bobo's case is also unlike *State v. Hurd*, 763 N.W.2d 17 (Minn.2009), and *Rainer*, 566 N.W.2d 692. In *Hurd*, the affiant did not believe that the hearsay declarant was "still alive." 763 N.W.2d at 33. In *Rainer*, there was no possibility that the author of the anonymous letter would appear at an evidentiary hearing and personally confirm the alleged information because the identity of the author was unknown. *See* 566 N.W.2d at 695.

STRAS, Justice (concurring in part, dissenting in part).

I join Part I of the court's opinion, affirming the postconviction court's summary denial of Bobo's second petition for postconviction relief. However, I respectfully dissent from the court's decision in Part II to remand Bobo's newly discovered evidence claim in his third postconviction petition for an evidentiary hearing. Instead, I would conclude for two reasons that the petition, files, and records of the proceeding conclusively show that Bobo is entitled to no relief. First, Bobo's newly discovered evidence is inadmissible hearsay. Second, the postconviction court did not clearly err when it found that Bobo's newly discovered evidence was "profoundly doubtful"—a finding that is supported by the record and that the court fails to address meaningfully. For these reasons, I would affirm the postconviction court's decision to summarily deny Bobo's third petition without an evidentiary hearing.

## I.

Under Minn.Stat. § 590.04, subd. 1 (2010), a postconviction petitioner is entitled to an evidentiary hearing "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." We review a postconviction court's decision to deny an evidentiary hearing for an abuse of discretion. *Buckingham v. State,* 799 N.W.2d 229, 233–34 (Minn.2011). The burden in postconviction proceedings is on the petitioner, *see* Minn.Stat. § 590.04, subd. 3 (2010), who must allege facts that, if proven, would entitle him or her to relief, *Doppler v. State,* 771 N.W.2d 867, 871 (Minn. 2009). Otherwise, no evidentiary hearing is required. *Spann v. State,* 740 N.W.2d 570, 572 (Minn.2007).

For Bobo to receive an evidentiary hearing in this case, he must allege facts that, if proven, would satisfy the four-prong test of *Rainer v. State:* (1) that the evidence was not known to the defendant or defense counsel at the time of trial; (2) that the evidence could not have been discovered through due diligence prior to trial; (3) that the evidence is not cumulative, impeaching, or doubtful; and (4) that the evidence would probably produce an acquittal or a more favorable result. 566 N.W.2d 692, 695 (Minn.1997). If the newly discovered evidence is inadmissible hearsay, it will neither satisfy *Rainer*'s fourth prong, *id.* at 695–96, nor require an evidentiary hearing.

Applying the fourth prong of *Rainer,* Bobo's newly discovered evidence would not produce an acquittal or a more favorable result because it consists of inadmissible hearsay. Bobo's evidence primarily consists of two affidavits, both from fellow inmates who claim that Samuel James admitted to them that he committed the crimes for which Bobo was convicted. Each statement was made by a declarant (Samuel James), out of court (in prison), and is being offered for the truth of the matter asserted (that James was the actual perpetrator of the crime). *Cf.* Minn. R. Evid. 801(c); *State v. Aubid,* 591 N.W.2d 472, 478 (Minn.1999) (defining hearsay).

Additionally, neither of the statements satisfy an exception to the hearsay rule. Bobo argues that the affidavits contain statements by James against his penal interest, but that exception applies *only* when the declarant is unavailable, *see* Minn. R. Evid. 804(b)(3), a fact that is directly at odds with James's undisputed statement in his own affidavit: that he is available and "willing to testify at any trial or hearing ... regarding this matter."[1]

---

1. The hearsay statements in the two affidavits also fail to satisfy the "statement against in-

Thus, even if the postconviction court were to credit the testimony of the two affiants following an evidentiary hearing, Bobo still would not be entitled to relief because the evidence would be inadmissible at a new trial. Put differently, even if the facts alleged in the petition were proven true, Bobo would not be entitled to relief because inadmissible evidence *cannot* "probably produce either an acquittal at a retrial or a result more favorable to the petitioner." *State v. Hurd*, 763 N.W.2d 17, 34 (Minn.2009); *accord Rainer*, 566 N.W.2d at 695–96; *Wayne v. State*, 498 N.W.2d 446, 448 (Minn.1993).

The court reaches a contrary conclusion based on conjecture that, under some speculative set of circumstances, the evidence *could* produce an acquittal or a more favorable result. In support of its conclusion, the court claims that *Dobbins v. State*, 788 N.W.2d 719 (Minn.2010), presented the "identical argument." The court is incorrect. In *Dobbins,* we considered whether evidence that the State's key witness at trial recanted his testimony warranted a new trial. *Id.* at 733. Here, on the other hand, we must determine whether newly discovered evidence, not presented at trial, warrants relief. These are two distinct inquiries, governed by two distinct tests. *See State v. Caldwell*, 322 N.W.2d 574, 585 (Minn.1982) (expressly rejecting the argument that false testimony should be analyzed under the same test as newly discovered evidence).

In divorcing the rule of *Dobbins* from its context, the court fails to account for the key distinctions between the two inquiries. The test for witness recantations, first articulated in *Larrison v. United States*, 24 F.2d 82 (7th Cir.1928), requires only that the jury *"might* have reached a different conclusion" without the false testimony. *Dobbins*, 788 N.W.2d at 733 (emphasis added). *Rainer*, on the other hand, demands that newly discovered evidence *"would probably* produce an acquittal or a more favorable result." *Rainer*, 566 N.W.2d at 695 (emphasis added). The *Larrison* standard is thus "less stringent" than the *Rainer* standard, *Ferguson v. State*, 645 N.W.2d 437, 444 (Minn.2002), and permits a new trial under a more speculative set of circumstances than *Rainer.* The *Rainer* and *Larrison* tests also involve very different considerations: *Larrison* examines the impact of the *removal* of false testimony, while *Rainer* governs the impact of *additional* evidence, the latter of which must be admissible at a retrial and sufficiently reliable to "probably produce an acquittal or a more favorable result." *Rainer*, 566 N.W.2d at 695. When the petition and the files and records of the proceeding conclusively show that the newly discovered evidence is neither admissible at a new trial nor satisfies all four prongs of *Rainer*, then it is not an abuse of discretion for the postconviction court to summarily deny the petition. Indeed, that is precisely the conclusion we reached in *Rainer.* 566 N.W.2d at 695–96.

The court today extends the rationale of *Dobbins* into uncharted territory, and in doing so, draws into doubt our decision in *Rainer*, which relied upon evaluations of admissibility without an evidentiary hearing to affirm the summary denial of a postconviction petition claiming newly discovered evidence. *See Rainer*, 566

terest" exception for a second, independent reason. Under Rule 804(b)(3), a statement "tending to expose the declarant to criminal liability and offered to exculpate the accused" must be corroborated by circumstances clearly indicating its trustworthiness. Minn. R. Evid. 804(b)(3). In this case, however, there is no independent evidence tying James to the victims, the crime scene, or the murder weapon. The statements therefore fail the corroboration requirement of Rule 804(b)(3), wholly apart from Bobo's failure to prove that James is unavailable. *See Riley v. State*, 819 N.W.2d 162, 169–70 (Minn.2012).

N.W.2d at 695; *see also Riley v. State*, 819 N.W.2d 162, 168–70 (Minn.2012) (evaluating, prior to an evidentiary hearing, the admissibility of newly discovered evidence for purposes of satisfying the exception of Minn.Stat. § 590.01, subd. 4(b)(2)). The court's decision also extends our case law into a new realm of speculation. In the past, we have ordered a remand when two of the three "likely outcomes" of an evidentiary hearing would be favorable to the petitioner. *Ferguson*, 645 N.W.2d at 443; *see also id.* (noting the district court's prediction that, at an evidentiary hearing, the declarant would invoke his right to remain silent). But in a dramatic departure from precedent, the court today remands for an evidentiary hearing based on the extremely unlikely possibility of just *one* of these favorable outcomes occurring: that James will confess to the killing. And the court does so in a case in which we already know what the alleged alternative perpetrator is going to say. James has provided a sworn affidavit—created *after* his alleged confessions to two fellow inmates—in which he indicates that he was not involved in the murder and only knew the details of the crime from talking with Bobo and the police. It is therefore little more than a flight of fancy to believe that James (in his fourth statement under oath regarding this crime) will now admit, contrary to all of his prior statements, that he shot and killed James Roberts and severely wounded R.N.

To warrant an evidentiary hearing, section 590.04, subdivision 1, requires the *postconviction court to examine the petition, files, and records of the proceeding* to determine whether the petitioner has alleged facts that, if proven true, would entitle him to relief. It does not require the postconviction court to grant an evidentiary hearing when it can conceive of some *other* set of circumstances, no matter how remote and inconsistent with the evidence accompanying the petition, in which the petitioner may be entitled to relief. That is a fishing expedition, not an evidentiary hearing. Accordingly, because the petition, files, and records conclusively show that Bobo's newly discovered evidence is inadmissible hearsay, I would follow the requirements of Minn.Stat. § 590.04, subd. 1, and conclude that the postconviction court did not abuse its discretion in denying Bobo's third postconviction petition without an evidentiary hearing.

II.

The fact that Bobo's evidence is inadmissible hearsay is not the only barrier to an evidentiary hearing in this case. The postconviction court also found that Bobo's evidence was "profoundly doubtful" under the third *Rainer* factor, a finding of fact that we may overturn only if it is clearly erroneous. *Dobbins*, 788 N.W.2d at 725; *Doppler*, 771 N.W.2d at 875. Because a petitioner must produce evidence that, if proven true, would satisfy all four prongs of *Rainer*, the postconviction court's finding that the evidence was doubtful provides an independent and sufficient reason for its summary denial of Bobo's petition. *See, e.g., State v. Caldwell*, 803 N.W.2d 373, 389 (Minn.2011) (affirming dismissal of postconviction petition without evidentiary hearing for failure to satisfy prong one of *Rainer*). Yet, in deciding to remand this case for an evidentiary hearing, the court inexplicably fails to address the merits of the postconviction court's finding that the evidence was doubtful, much less conclude that the finding was clearly erroneous.

The court instead concludes that a remand is necessary because a postconviction court "should not make witness credibility determinations without first holding an evidentiary hearing." But the court's conclusion conflicts with *Rainer*, in which we affirmed a postconviction court's summary denial of relief to a petitioner because the newly discovered evidence was unreliable. 566 N.W.2d at 696. In fact,

we held that an evidentiary hearing was unnecessary in that case precisely because of the unreliable nature of the evidence accompanying the petition. *Id.* ("Given the unreliable nature of this letter, an evidentiary hearing on this issue was not required and postconviction relief was properly denied."). The holding in *Rainer* makes good sense. Surely the court would not remand for an evidentiary hearing if the affidavits in this case had alleged that the President of the United States had confessed to committing the shooting in question. But in requiring an evidentiary hearing before making an assessment of doubtfulness, that is precisely the rule the court endorses today: that no matter how unlikely, unsupported, or doubtful the evidence, an evidentiary hearing is required to separate the probable from the ridiculous.

Equally important, the court also fails to explain why an evidentiary hearing is necessary in *this* case for the postconviction court to decide that Bobo's newly discovered evidence is doubtful. To be sure, sometimes the persuasive force of evidence will turn on the credibility of a witness, and an assessment of a witness's demeanor will assist the postconviction court in determining whether newly discovered evidence is doubtful. But here, even assuming Bobo's newly discovered evidence is true and the affiants turn out to be witnesses with the highest levels of credibility and honesty (an unlikely proposition), the truth of James's statement (that James, not Bobo, committed the murder) is itself extremely doubtful. In his own affidavit, James expressly admits that he had lied "the whole time," particularly about Bobo's involvement in the crime. According to the record, James first claimed that Bobo confessed to him that he committed the shooting, only to reverse course and proclaim Bobo's innocence at trial. In 2008 and 2009, James then allegedly confessed to committing the murder in question to two fellow inmates, only to sign an affidavit in 2010 in which he claims that he wants to prove Bobo's innocence but does not indicate that he was the actual perpetrator of the crime. In short, to believe that James, not Bobo, committed the murder, the postconviction court would have to credit James's hearsay statements reported by two of James's fellow inmates several years after the statements were allegedly made, and disregard the sworn statements made by James in his affidavit, his trial testimony, and his testimony before the grand jury— none of which indicate James was involved in the murder.

Of course, the postconviction court made precisely the opposite finding: that Bobo's newly discovered evidence was "profoundly doubtful." Based on the petition, files, and records of the proceeding, I cannot say that the postconviction court's finding was clearly erroneous or that the district court abused its discretion in declining to order an evidentiary hearing to test the veracity of the inmates' affidavits or James's alleged confessions.

### III.

For the foregoing reasons, I would conclude that the petition, files, and proceedings in this case conclusively show that Bobo is entitled to no relief, and that an evidentiary hearing is neither necessary nor appropriate in this case. Accordingly, I would affirm the district court's summary denial of Bobo's second and third petitions for postconviction relief.

DIETZEN, Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice Stras.