*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0580**

State of Minnesota,
Respondent,

vs.

Michael David Kochevar,
Appellant.

**Filed November 28, 2016
Affirmed; motion denied
Reilly, Judge**

Hennepin County District Court
File No. 27-CR-14-654

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Steven J. Meshbesher, David Lundgren, Meshbesher & Associates, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Halbrooks, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

In this appeal from the postconviction court's order denying relief, appellant argues the postconviction court erred in (1) concluding the video recording was not material

exculpatory evidence sufficient to warrant a new trial per *Brady v. Maryland* and Rule 9 of the Minnesota Rules of Criminal Procedure, (2) determining his trial counsel provided effective assistance, and (3) denying his petition for postconviction relief without a hearing. We affirm.[1]

**FACTS**

The record presented on appeal conclusively shows the facts are as follows. While stopped on the northbound I-35W exit ramp, appellant Michael David Kochevar shouted obscenities at the taxicab driver alongside him, took a picture of the driver with his cellphone, and threatened him with a handgun. The taxicab driver drove to a nearby gas station and reported the incident to the police. After investigating the incident, police identified appellant as the suspect and took him into custody. Sergeant Paul Hatle interrogated appellant in Room 108 of Minneapolis City Hall, which the district court noted "is well known throughout this courthouse as the place where recorded interviews are often conducted."

During the interrogation, appellant denied brandishing a gun and proffered three explanations as to how the victim knew he carried a handgun. First, appellant stated the victim likely mistook his cellphone for a weapon. Second, appellant explained that he lives in the area and the victim, or the victim's friends, likely saw him carrying the gun prior to

---

[1] During the pendency of his appeal, appellant Michael David Kochevar filed two motions for release pending appeal. This court denied appellant's first motion in an order dated February 2, 2016. In his second motion, filed on October 27, 2016, appellant argues that "he may be compelled to serve the sentence imposed before his case is decided" because the term of his confinement ends on January 3, 2017. Because we affirm the postconviction court's order denying relief, appellant's motion is dismissed as moot.

the incident occurring. And third, appellant clarified, "I know why he described it. I can tell you . . . I stepped my foot out of my car, lifted up my jacket because I've [got a] long jacket on, grabbed my phone, and he probably saw my gun. That's probably what happened." The Hennepin County Attorney's Office charged appellant with second-degree assault and terroristic threats.

Prior to trial, appellant created a demonstrative video which demonstrated how the victim may have seen his gun. The district court reviewed the video and described the reenactment: "In the video, [appellant's] holster is on his belt behind the phone holster, stuffed with what appears to be a blue towel (presumably to make it more clear where the gun was)." Thereafter, the district court granted appellant permission to introduce the video provided that he established proper foundation.

At trial, appellant presented the following defense: He stepped out of his pickup truck to reach his phone from its holster because he was wearing a long jacket. And as a result, the victim inadvertently observed the gun. Appellant did not testify at trial, and he did not introduce the demonstrative video into evidence.

Sergeant Hatle testified at trial. His testimony included a physical demonstration of appellant's defense. Immediately before Sergeant Hatle testified, but part-way through trial, the parties observed Sergeant Hatle with a photograph that appeared to be taken in Room 108. Sergeant Hatle indicated the photograph was a still image captured from the video recording of appellant's interview. The prosecutor was unaware that this video existed, and consequently, never disclosed the video to the defense. After discovering the

3

video, the parties agreed to proceed without reviewing the video or informing the district court of the newly discovered evidence.

During closing argument, appellant's trial counsel explained the manner in which the victim saw appellant's gun, arguing:

> The third option I submit to you is the most logical one. It's exactly the way you heard it talked about in [appellant's] statement.
>
> . . . .
>
> It's very easy, you unlock your seatbelt, you swing the door open, you step down, and as you step down you turn because you've got to get to your stuff and you pull your coat back to get to your phone and right next to it is the gun.

The jury returned guilty verdicts on both counts.

The following month, the district court received a copy of the video recording. In its order denying appellant's motions for judgment of acquittal and a new trial, the court noted "the video would have corroborated Sergeant Hatle's demonstrations of [appellant's] gestures." Thus, the court concluded that "[n]othing in the video would [have] . . . produce[d] an acquittal or a more favorable result." At the sentencing hearing, appellant confessed to the charges, and the district court sentenced appellant to 36 months' imprisonment.[2] Appellant initially appealed but later stayed his appeal to pursue postconviction proceedings.

---

[2] At oral argument, appellant's counsel indicated trial counsel coerced appellant to confess. After reviewing the record, we conclude there is no support for this statement.

In his motion for postconviction relief, appellant argued he was entitled to a new trial because (1) the state failed to produce the video recording of the interrogation, which violated his right to due process and a fair trial under *Brady v. Maryland* and Minnesota Rule of Criminal Procedure 9.01 and (2) trial counsel's assistance was ineffective. The postconviction court denied appellant's petition for relief without an evidentiary hearing.

This appeal follows.

## D E C I S I O N

### I. The prosecution's nondisclosure of the video recording did not violate *Brady* or Rule 9 of the Minnesota Rules of Criminal Procedure.

First, appellant argues he is entitled to a new trial because the state's failure to disclose the video recording violated his *Brady* rights and Rule 9 of the Minnesota Rules of Criminal Procedure. We affirm the postconviction court's order denying appellant's petition for relief because the video recording is not material under *Brady* or Minn. R. Crim. P. 9.01. Appellant is not entitled to a new trial on these grounds.

We analyze these claims separately below.

### A. Standard of Review

A defendant is entitled to seek postconviction relief "to vacate and set aside the judgment . . . or grant a new trial . . . or make other disposition as may be appropriate." Minn. Stat. § 590.01, subd. 1 (2014). On appeal, we will "overturn a postconviction court's decision only when we find an abuse of discretion, and we will consider only whether sufficient evidence supports the postconviction court's conclusions." *Pederson v. State*, 692 N.W.2d 452, 459 (Minn. 2005). Appellant bears the burden of proving by a fair

5

preponderance of the evidence that sufficient facts warrant a new trial. Minn. Stat. § 590.04, subd. 3 (2014).

"Whether a discovery violation occurred presents a question of law, which [appellate courts] review de novo." *State v. Colbert*, 716 N.W.2d 647, 654 (Minn. 2006).

**B. The video recording is not material evidence as defined by *Brady*.**

We first consider appellant's argument that under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), the state's failure to produce the video recording deprived him of his right to due process and a fair trial. As the United States Supreme Court clarified in *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S. Ct. at 1196-97.

To establish a *Brady* violation, appellant must satisfy three components. *Walen v. State*, 777 N.W.2d 213, 216 (Minn. 2010) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948 (1999)). First, appellant must prove the video recording is favorable to him because it is exculpatory or impeaching. *Id.* Second, he must demonstrate the state suppressed the evidence, either intentionally or otherwise. *Id.* And third, the evidence must be material—the absence of the evidence must have prejudiced appellant. *Id.*

The postconviction court concluded that appellant failed to satisfy the first and third *Brady* components, and we agree. Because we determine the video recording is not

material, and appellant must satisfy all three components to establish a *Brady* violation, we need not address the other two prongs.

Applying the third component, the postconviction court determined the video recording was not material. Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (citations omitted). The Minnesota Supreme Court defines reasonable probability as "sufficient to undermine confidence in the outcome." *Pederson*, 692 N.W.2d at 460 (quotation omitted). Relying on the affidavits of five independent experts, appellant argues the video recording is material as his facial expressions and gestures would have significantly impacted the verdict. Specifically, he argues "[t]he evidence would have provided simultaneous visual information along with the spoken information—leading to better processing of the evidence by the jury." We disagree.

In the video recording, appellant is "stoic and flat." Likewise, the district court found appellant's argument that "the jury would have somehow been swayed by seeing the video is unconvincing." As the Supreme Court explained, "[w]e do not, however, automatically require a new trial whenever a combing of the prosecutors files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict." *Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 766 (1972) (quotation omitted).

In this case, the state presented substantial evidence on which the jury could base its verdict. The jury heard the victim testify that appellant did not leave his car to reach his cellphone but instead "grabbed his gun from the back" and pointed the gun at the victim

with "both hands."  The jury also heard the audio recording of appellant's interrogation.

And the jury witnessed Sergeant Hatle testify about appellant's interrogation, including

appellant's physical description of how the victim saw his gun.

The postconviction court therefore did not err in determining that the video

recording was immaterial.  *See Pederson*, 692 N.W.2d at 460 (concluding that, because

materiality issues under *Brady* combine issues of fact and law, the proper standard of

review is de novo).  As a result, we conclude the state's inadvertent nondisclosure of the

video recording was not a *Brady* violation.

### C. Nondisclosure of the video recording is not a violation of rule 9 because the video recording is not material.

We next address appellant's argument that he is entitled to a new trial because the

prosecution's failure to produce the video recording violated Rule 9 of the Minnesota Rules

of Criminal Procedure.  Again, we disagree.

"The first two components of the *Brady* test are embodied in Rule 9.01 of the

Minnesota Rules of Criminal Procedure," *Pederson*, 692 N.W.2d at 460, but rule 9.01 is

more expansive than *Brady*.  *State v. Williams*, 593 N.W.2d 227, 235 (Minn. 1999).  Rule

9.01, subdivision 1, describes the circumstances under which the prosecutor must disclose

evidence and provides in pertinent part:

> The prosecution must, at the defense's request . . . allow access
> at any reasonable time to all matters within the prosecutor's
> possession or control that relate to the case . . . .
>
> . . . .

> [The prosecutor must disclose all] [m]aterial or information in the prosecutor's possession and control that tends to negate or reduce the defendant's guilt.
>
> . . . .
>
> The prosecutor's obligations under this rule extend to material and information in the possession or control of members of the prosecution staff and of any others who have participated in the investigation or evaluation of the case.

Minn. R. Crim. P. 9.01, subds. 1(1), 1(6), 1a.[3]

However, the analysis under rule 9.01 is similar to *Brady* in that a new trial is warranted only if the improperly suppressed evidence is "material" according to the third *Brady* component. *Pederson*, 692 N.W.2d at 460 (quoting *Giglio*, 405 U.S. at 154, 92 S. Ct. at 766). Thus, appellant must "show not only a discovery violation, but also prejudice as a result of the discovery violation before a new trial will be ordered." *State v. Boldman*, 813 N.W.2d 102, 109 (Minn. 2012). Whether a discovery violation prejudiced appellant "rests within the discretion of the trial judge." *Id.* And we will not reverse the trial court's determination unless "the discovery violation, viewed in the light of the whole record, appears to be inexcusable and so prejudicial that the defendant's right to a fair trial was denied." *Id.*

As stated above, the video recording was not material, and the record is devoid of any evidence that appellant suffered prejudice. We therefore conclude the state's failure

---

[3] Contrary to appellant's assertion at oral argument, rule 9.01 does not similarly require the state to disclose to the court all evidence beneficial for the accused. *Id.*

to disclose the video recording was not a violation of rule 9.01 and appellant is not entitled to a new trial under rule 9 or *Brady*.

## II. Appellant's trial counsel's assistance was effective.

Appellant also appeals the postconviction court's order denying his ineffective-assistance-of-counsel claim. Here, appellant argues he is entitled to a new trial because his trial counsel failed to review the video recording and to properly advise him of his right to testify. This, he argues, was ineffective assistance. We disagree.

### A. Standard of Review

To establish ineffective assistance of counsel, appellant must show that: (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that, but for trial counsel's errors, the outcome of the trial would have been different. *Williams v. State*, 764 N.W.2d 21, 29-30 (Minn. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984)). The objective standard of reasonableness is defined as the representation an "attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *State v. Gassler*, 505 N.W.2d 62, 70 (Minn. 1993) (quotation omitted). Under the second prong of the *Strickland* test, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987) (quotation omitted). We presume trial counsel's representation was reasonable and "give particular deference to trial strategy." *Schneider v. State*, 725 N.W.2d 516, 521 (Minn. 2007). If either prong is determinative, we need not analyze both. *State v. Vang*, 847 N.W.2d 248, 266 (Minn. 2014).

10

**B. Trial counsel's decision not to review the video recording was trial strategy.**

Appellant first argues his trial counsel's failure to halt trial proceedings to review the video recording of his interrogation constitutes ineffective assistance. As support, appellant relies on the affidavits of five expert witnesses who all opine, in identical words, "[u]nder no circumstances is it acceptable for a criminal defense attorney to willfully ignore evidence in the [s]tate's possession."

Generally, this court will not review an ineffective-assistance-of-counsel claim based on trial strategy. *Andersen v. State*, 830 N.W.2d 1, 10, 13 (Minn. 2013). "Because of the difficulties inherent in making [that] evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

On this record, it is clear that trial counsel's decision to forgo immediate review of the video recording amounts to trial strategy. It is well established that trial strategy includes the "the extent of counsel's investigation and the selection of evidence presented to the jury." *Vang*, 847 N.W.2d at 267 (citing *White v. State*, 711 N.W.2d 106, 111 (Minn. 2006); *Opsahl v. State*, 677 N.W.2d 414, 421 (Minn. 2004)). Here, appellant's trial counsel explained "the [s]tate did not attempt to reference the video or introduce it into trial, [so] I chose not to seek a new trial or a continuance . . . this [was] a tactical decision by the defense." We will not review counsel's trial tactics as we have the benefit of hindsight, unlike trial counsel, who must have the flexibility to represent a client to the fullest extent permitted by law. *See Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067.

11

Because we conclude trial counsel's decision not to review the video recording was a matter of trial strategy, we find appellant's right to effective assistance of counsel was not violated.

### C. Trial counsel provided effective assistance by properly informing appellant of his right to testify.

Second, appellant challenges the postconviction court's conclusion that his trial counsel properly apprised him of his right to testify. We will only disturb a postconviction court's determination if the court abused its discretion. *Walen*, 563 N.W.2d at 750.

A criminal defendant has a constitutional right to testify at trial and a waiver of this right, like other constitutional rights, must be knowing and voluntary. *Id.* at 751 (citing *United States v. Bernloehr*, 833 F.2d 749, 751 (8th Cir. 1987)). "When the trial court record is silent as to waiver, this court must presume that the decision not to testify was made by defendant voluntarily and intelligently." *Id.* (citing *State v. Smith*, 299 N.W.2d 504, 506 (Minn. 1980)). And appellant bears the burden of proving that his counsel provided ineffective assistance. *See Marhoun v. State*, 451 N.W.2d 323, 328 (Minn. 1990).

In support of his petition for postconviction relief, appellant offered his affidavit in which he swore counsel failed to properly inform him of his right to testify. This affidavit is the only evidence presented on appeal to rebut the presumption that his trial counsel's assistance was effective. After reviewing his affidavit, the district court concluded appellant lacks credibility. It is within the postconviction court's discretion to discredit the testimony of the defendant. *See State v. Jensen*, 322 N.W.2d 608, 609-10 (Minn. 1982).

Appellant did not expressly waive his right to testify on the record. But the postconviction court properly addressed appellant's right to testify in its discussion of the jury instructions with appellant. "Solemn declarations in open court carry a strong presumption of verity" and the district court may dismiss a "subsequent presentation of conclusory allegations unsupported by specifics." *Andersen*, 830 N.W.2d at 11 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977)). In this case, appellant specifically requested that the district court instruct the jury about appellant's right not to testify. In its discussion of the proposed instruction, the district court asked appellant if he had "spoken with [his] defense team" and if he required more time do so. Appellant responded that he had "sufficient time to talk with [his defense] attorneys" and wanted the instruction given to the jury.

Consequently, the district court did not abuse its discretion by concluding that appellant knowingly and voluntarily waived his right to testify. Thus, appellant's trial counsel's representation did not fall below an objective standard of reasonableness.

Appellant is not entitled to a new trial on either ineffective-assistance claim.

## III. The postconviction court did not abuse its discretion when it denied appellant's petition for relief without an evidentiary hearing.

Finally, appellant argues the postconviction court abused its discretion by denying his petition for postconviction relief without a hearing. Specifically, appellant argues he is entitled to postconviction relief based on the court's (1) postconviction application of the invited-error doctrine to his *Brady* and rule 9 violation claims, (2) summary denial of his

13

claims of ineffective assistance, and (3) erroneous conclusion that the prosecution was unaware of the video's existence. We affirm.

### A. Standard of Review

"[Appellate courts] review a denial of a petition for postconviction relief, as well as a request for an evidentiary hearing, for an abuse of discretion. A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012) (citations and quotations omitted). We review the postconviction court's findings of fact for clear error and its legal conclusions de novo. *Greer v. State*, 836 N.W.2d 520, 522 (Minn. 2013).

### B. Appellant is not entitled to an evidentiary hearing.

A postconviction court may dismiss a petition for postconviction relief without an evidentiary hearing if the alleged facts, files, and the record as a whole conclusively demonstrate the petitioner is not entitled to relief. Minn. Stat. § 590.04, subd. 1 (2014). In order for a postconviction court to grant relief, the allegations in the postconviction petition for relief must be "more than argumentative assertions without factual support." *State v. Caldwell*, 803 N.W.2d 373, 388 (Minn. 2011) (quotation omitted). The postconviction court may refuse to hold an evidentiary hearing when a petitioner "alleges facts that, if true, are legally insufficient to entitle him to the requested relief." *Bobo v. State*, 820 N.W.2d 511, 517 (Minn. 2012) (quotation omitted). For the following reasons, we conclude the district court did not abuse its discretion in denying appellant's petition for postconviction relief without an evidentiary hearing.

We first address appellant's claim that the district court abused its discretion by applying the invited-error doctrine to deny his petition. On review of the record, it is apparent that the district court did not dismiss appellant's *Brady* and rule 9 violation claims under the invited-error doctrine. Instead, the district court determined the record conclusively demonstrated that appellant failed to satisfy the *Brady* components or prove a violation of Rule 9 of the Minnesota Rules of Criminal Procedure. Thus, appellant's claim fails.

Next, we consider appellant's claim that the postconviction court erred in denying him relief on his claims of ineffective assistance. Specifically, appellant challenges the postconviction court's conclusions that: (1) trial counsel's failure to review the video recording was trial strategy, and (2) trial counsel adequately advised him of the right to testify. To receive an evidentiary hearing on an ineffective-assistance-of-counsel claim, appellant must "allege facts that, if proven by a fair preponderance of the evidence, would satisfy the two-prong test" established in *Strickland*. *Bobo*, 820 N.W.2d at 516. As we previously stated, appellant failed to allege facts sufficient to satisfy the *Strickland* test. Thus, appellant is not entitled to an evidentiary hearing on either ineffective-assistance claim.

Finally, we address appellant's claim that he is entitled to an evidentiary hearing as the postconviction court preliminarily determined the prosecution had no actual knowledge of the video recording. We disagree. Although the postconviction court admonished the prosecution for failing to discover the video recording, the postconviction court concluded

15

"there was no deliberate action by the [s]tate to withhold the video. Both the prosecutor and the defense were surprised by its existence."

The record presented on appeal conclusively shows that neither defense counsel nor the prosecution knew the video existed prior to trial. Thus, appellant is not entitled to an evidentiary hearing to determine whether the nondisclosure was inadvertent, negligent, or intentional.

**Affirmed; motion denied.**