STATE of Minnesota, Respondent,

v.

Gail Ann DOMABYL, Appellant.

No. 48055.

Supreme Court of Minnesota.

Nov. 24, 1978.

C. Paul Jones, Public Defender, Kathleen Kelly, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., St. Paul, William V. Von Arx, County Atty., Caledonia, for respondent.

## OPINION

PER CURIAM.

Defendant was found guilty by a district court jury of a charge of criminal negligence resulting in death, Minn.St. 609.205, a charge stemming from a one-car automobile accident which killed two young men, and the trial court sentenced defendant to a limited maximum term of 14 months in prison. Issues raised on the appeal relate to the trial court's admission of an out-of-court statement defendant made to a law-enforcement officer and to the court's denial of a *Schwartz* hearing on a claim that one or more of the jurors misunderstood the instructions. We affirm.

The accident out of which the prosecution arose occurred in the early morning hours of May 23, 1976. An accident reconstruction expert testified that the accident occurred as the automobile was traveling at a speed of 85 miles-per-hour on a curve. Defendant did not seriously attempt to challenge the evidence that the vehicle had been driven in a criminally negligent manner but maintained that the driver was one of the young men who was killed, not her. However, the state's key witness, the owner of the vehicle, who was alone in the backseat at the time of the accident, testified that defendant was the driver and that just minutes prior to the accident she and one of the two young men had urged defendant to slow down.

■ Evidence against defendant also included the testimony of the investigating sheriff's deputy, who testified that he interrogated defendant in the hospital nearly 2 weeks following the accident, that she said one of the two young men was "in the middle" in the front seat and the other (the one she later claimed at trial was the driver) was "next to the door," and that while she stated she could not remember if she was the driver, she did not deny it or claim that anyone else was. The deputy testified at the omnibus hearing that he gave defendant a *Miranda* warning before interrogating her and asked her if she understood her rights and wanted to waive them before he interrogated her. Therefore, the trial court did not clearly err in finding that defendant was given a *Miranda* warning and that she voluntarily waived her *Miranda* rights. *State v. Willadson,* 268 N.W.2d 546 (Minn.1978). *State v. Hoskins,* 292 Minn. 111, 193 N.W.2d 802 (1972). Because the court did not clearly err in this finding, we need not decide whether in fact a *Miranda* warning was required. See, *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

The main issue raised by defendant on appeal relates to the trial court's denial of a *Schwartz* hearing on the claim that one or more of the jurors misunderstood the instructions.[1] Defendant's request for a *Schwartz* hearing was based on an affidavit of the foreman of the jury obtained by defense counsel after defendant's father had questioned the foreman about the jury deliberations. In the affidavit the foreman stated that he told the other jurors during the deliberation that they could and should find that defendant was criminally negligent even if she was not the driver. He added in the affidavit that if he had known that it was essential that defendant was the driver in order to find her guilty of criminal negligence, then he would have voted to acquit because he was convinced she was not the driver.

The trial court, after hearing legal arguments from counsel, denied the request for a *Schwartz* hearing because of the general rule that a jury verdict cannot be impeached by post-verdict affidavits or testimony of jurors concerning that which transpired in the course of jury deliberations. See, *State v. Hoskins,* 292 Minn. 111, 193 N.W.2d 802 (1972). The trial court also expressed doubt that the jury would erroneously conclude that it could find defendant guilty of criminal negligence even if it determined that she had not driven the vehicle, because both counsel had focused the jury's attention on this issue as had the court's instructions. The court also stated that it felt the evidence that defendant was the driver was strong and pointed out that at the time of sentencing defendant had said, "I still don't think I was the driver of the car," a statement which contrasted with her positive denial at trial.

■ Although there are exceptions[2] to the general rule against permitting jurors to testify in impeachment of the jury verdict, the cases clearly do not make any exception in cases such as this one, and accordingly we conclude that the trial court did not err in denying the request for a *Schwartz* hearing. Key cases include: *Walker v. United States,* 298 F.2d 217 (9 Cir. 1962) (trial court properly refused to consider affidavit of juror, offered by defendant, concerning alleged misconception by jurors of court's instructions on entrapment); *United States v. Chereton,* 309 F.2d

1. In *Schwartz v. Mpls. Suburban Bus Co.,* 258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960), we outlined procedures to be followed when a party seeks to impeach a verdict. Rule 26.03, subd. 19(6), Rules of Criminal Procedure, adopts the procedures outlined in *Schwartz.* This rules states: "Affidavits of jurors shall not be received in evidence to impeach their verdict. If the defendant has reason to believe that the verdict is subject to impeachment, he shall move the court for a summary hearing. If the motion is granted the jurors shall be interrogated under oath and their testimony recorded."

2. See, e. g., discussion in *State v. Hoskins,* 292 Minn. 111, 193 N.W.2d 802 (1972), of the exception made when the verdict is coerced, not by personality, experience, or knowledge but by overt actions which are coercive in nature and within the consciousness of all the jurors.

197 (6 Cir. 1962), certiorari denied, 372 U.S. 936, 83 S.Ct. 883, 9 L.Ed. 767 (1963) (trial court properly denied post-trial hearing in case in which affidavits of four jurors indicated that during deliberation they thought they were finding defendant guilty of count I, which had been dismissed, instead of guilty of four other counts); *United States v. Stacey,* 475 F.2d 1119 (9 Cir. 1973) (trial court did not abuse discretion in denying hearing to question juror about post-trial statement to defense counsel that other jurors by their statements appeared to misunderstand that intent was element of offense); *United States v. Neary,* 552 F.2d 1184 (7 Cir. 1977) (jurors may not impeach verdict by testifying about jury misconception of instructions). See, also, *Collings v. Northwestern Hospital,* 202 Minn. 139, 277 N.W. 910 (1938), and *State v. Cater,* 190 Minn. 485, 252 N.W. 421 (1934).

The same result would be mandated by Rule 606(b), Rules of Evidence, which was not in effect at the time of trial. Rule 606(b) provides as follows:

"Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes."

This rule is identical to Rule 606(b) of the Federal Rules of Evidence, rules which were promulgated by the United States Supreme Court. Discussing this rule, Judge Weinstein in his treatise states as follows:

"Rule 606(b) operates to prohibit testimony as to certain conduct by the jurors which has no verifiable outward manifestations. Excluded would be testimony that a juror misunderstood or disregarded evidence, misunderstood or disregarded the judge's instructions, thought that the jury would be kept out indefinitely until agreement was reached, considered an election of the accused not to take the stand, believed that recommending mercy would avoid the death penalty, was overcome by weariness or unsound arguments of other jurors, or by a desire to return home.

"Because of the general provision in Rule 601 that all witnesses are competent except as otherwise provided, evidence of jury conduct is admissible and a juror may testify to it except as prohibited by subdivision (b) of Rule 606. Rule 606(b) would not render a witness incompetent to testify to juror irregularities such as intoxication, exposure to threats, acceptance of bribes, or possession of knowledge relevant to the facts in issue obtained not through the introduction of evidence but acquired prior to trial or during trial through unauthorized views, experiments, investigations, news media, books or documents or through consultation with parties, witnesses or others, or through other extra-record channels, regardless of whether the jury misconduct occurred within or without the jury room. The rule would, however, prohibit inquiry into the effect such irregularities had on the minds of the jurors. The judge must assess the misconduct and decide whether it would probably have had a prejudicial effect; he may not—with the exception of matters coming to his attention during the trial such as news reports—probe to determine whether it had an actual effect. The intimate details of jury deliberations are protected even when there is objective evidence indicating that misconduct occurred." 3 Weinstein & Berger, Weinstein's Evidence, United States Rules § 606[04].

The rule is also discussed in Note, 4 Wm. Mitchell L.Rev. 417.

Affirmed.