STATE OF MINNESOTA

IN SUPREME COURT

A23-1827

Hennepin County                                                                   Gaïtas, J.

Joshua Chiazor Ezeka,

          Appellant,

vs.                                                                                Filed:  February 5, 2025
                                                                                   Office of Appellate Courts
State of Minnesota,

          Respondent.

_____

Nico Ratkowski, Ratkowski Law PLLC, Saint Paul, Minnesota, for appellant.

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Britta Nicholson, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

_____

S Y L L A B U S

The district court did not abuse its discretion by summarily denying appellant's petition for postconviction relief because, even if the facts alleged in the postconviction petition were proven by a fair preponderance of the evidence, appellant is conclusively entitled to no relief.

Affirmed.

Considered and decided by the court without oral argument.

GAÏTAS, Justice.

In 2018, a Hennepin County jury found Joshua Chiazor Ezeka guilty of first-degree premeditated murder, first-degree attempted murder, and second-degree assault for killing Birdell Beeks in the presence of her granddaughter while shooting at a rival gang member. The district court sentenced Ezeka to life in prison without the possibility of release for the first-degree murder offense and to consecutive prison terms of 360 months for first-degree attempted murder and 36 months for second-degree assault. On direct appeal, we affirmed Ezeka's convictions but remanded for resentencing on the attempted first-degree murder offense because the sentence for that offense exceeded the statutory maximum sentence. After resentencing, Ezeka filed a timely petition for postconviction relief in 2022, and the district court denied the petition without an evidentiary hearing. Ezeka now appeals the district court's summary denial of his postconviction petition. Because Ezeka is conclusively entitled to no relief even if the facts alleged in his postconviction petition were proven by a fair preponderance of the evidence, we affirm.

**FACTS**

Ezeka received a phone call from F.S., a fellow member of the gang "the Lows," on May 26, 2016. F.S. warned Ezeka that a member of "the Highs" gang—D.G.—was driving near Ezeka's residence and planned to shoot someone at the home. After receiving this phone call, Ezeka exited his house and walked to a nearby vacant lot located at an intersection. Beeks and her teenage granddaughter, both innocent bystanders, were in a parked van at the same intersection. As D.G.'s car approached the intersection, Ezeka fired

2

nine shots from a .380-caliber gun. Beeks was struck and killed by one of those shots. Ezeka then fled in a vehicle driven by F.S.

Police soon identified Ezeka as a suspect in the shooting. On June 2, 2016, while Ezeka was in custody for a probation violation, police questioned him after providing a *Miranda* warning. Ezeka requested counsel, but the police continued to question him. Over the course of this interrogation, Ezeka maintained his innocence, and he was ultimately released from jail.

Months later, police arrested Ezeka for Beeks's murder. During a second custodial interrogation on January 23, 2017—and following a *Miranda* warning and Ezeka's waiver of his *Miranda* rights—Ezeka admitted to receiving the phone call from F.S., leaving his house with a gun, firing nine bullets toward D.G.'s car, and fleeing the scene.

A grand jury indicted Ezeka for first-degree premeditated murder of Beeks, Minn. Stat. § 609.185(a)(1) (2016), attempted first-degree premeditated murder of D.G., Minn. Stat. § 609.17 (2016), Minn. Stat. § 609.185(a)(1), and second-degree assault of Beeks's granddaughter, Minn. Stat. § 609.222, subd. 1 (2016), among other charges. Ezeka moved to suppress his statements to police, and the district court denied his request to suppress his post-*Miranda* statements. The case proceeded to a jury trial.

At trial, Ezeka introduced his January 2017 confession into evidence and waived his constitutional right to testify. His attorney argued to the jury that the State's evidence failed to establish that Ezeka premeditated and intended to kill D.G., and thus, Ezeka was not guilty of the murder charges.

The district court instructed the jury regarding all the charged offenses and also provided an instruction for a lesser-included offense—second-degree unintentional murder while committing a felony. *See* Minn. Stat. § 609.19, subd. 2(1) (2016). Following deliberations, the jury found Ezeka guilty of all charges, including first-degree premeditated murder for killing Beeks, attempted first-degree premeditated murder as to D.G., and second-degree assault of the granddaughter. The district court sentenced Ezeka to life imprisonment without the possibility of release for the first-degree murder conviction and imposed separate consecutive sentences for the convictions relating to D.G. and the granddaughter.

On direct appeal to this court, Ezeka made several challenges to his first-degree murder and attempted first-degree murder convictions. *State v. Ezeka*, 946 N.W.2d 393 (Minn. 2020). Ezeka contended that the district court erred in denying his motion to suppress the statements he made to the police. Among his challenges to the statements, he argued that the second police interrogation—in January 2017—violated his right to counsel under Article I, Section 7, of the Minnesota Constitution, and thus, his resulting confession was involuntary. *Ezeka*, 946 N.W.2d at 401–404. Ezeka also argued that the district court committed plain error in its jury instructions by (1) incorporating elements of aiding and abetting liability into its instruction on first-degree premeditated murder and (2) failing to provide the jury with an instruction on the requirement for corroboration of accomplice testimony. *Id.* at 407–08.

We affirmed Ezeka's convictions. Regarding the voluntariness of Ezeka's January 2017 confession, we held that the Minnesota Constitution provides no greater protection

4

than the United States Constitution, under which "a 14-day break in custody ends the protection of an individual's invocation of the right to counsel." *Id.* at 403; *see Maryland v. Shatzer*, 559 U.S. 98, 110 (2010). Because Ezeka's confession in January 2017 was made after a break in custody of more than 14 days, and because there was nothing to suggest that his will was overborne when he confessed, we affirmed the district court's denial of Ezeka's pretrial motion to suppress. *Id.* at 403–07. We also concluded that the errors in the district court's jury instructions were not plain errors that affected Ezeka's substantial rights. *Id.* at 407–10. However, we reversed and remanded for resentencing on the attempted first-degree premeditated murder conviction because, as both parties agreed, the sentence imposed exceeded the statutory maximum sentence for that offense. *See id.* at 410.

Ezeka petitioned the United States Supreme Court for certiorari review of our decision. The Court denied his petition. *Ezeka*, 946 N.W.2d 393, *cert. denied*, 141 S. Ct. 934 (2020).

In 2022, after his resentencing, Ezeka filed a petition for postconviction relief in the district court and requested an evidentiary hearing. Ezeka's petition asserted seven primary claims: (1) the district court committed reversible error when it denied his pretrial motion to suppress his statements to the police because another provision of the Minnesota Constitution—Article I, Section 6—is more expansive than the Sixth Amendment right to counsel under the federal constitution; (2) newly discovered evidence of invidious discrimination by the Minneapolis Police Department (MPD) and the Hennepin County Attorney's Office (HCAO) creates an inference that Ezeka was deprived of equal

5

protection of the law in violation of the Fourteenth Amendment to the United States Constitution and Article I, Section 2, of the Minnesota Constitution; (3) newly discovered evidence of prejudicial practices by the MPD and the HCAO revealed that the State withheld material evidence that was favorable to Ezeka's defense in violation of his right to due process under the Fourteenth Amendment to the United States Constitution; (4) the Minnesota Government Data Practices Act is unconstitutional; (5) the district court plainly erred by failing to grant Ezeka's requests at trial for lesser-included-offense instructions on third-degree murder and second-degree manslaughter; (6) trial counsel provided ineffective assistance of counsel; and (7) appellate counsel provided ineffective assistance of counsel.

The district court rejected each of Ezeka's claims without holding an evidentiary hearing. It concluded that, even if the facts alleged in the postconviction petition were proven by a fair preponderance of the evidence, Ezeka's claims were meritless. Additionally, it concluded that all claims, except the ineffective-assistance-of-appellate-counsel claims, were procedurally barred because they were known or should have been known to Ezeka at the time of his direct appeal and raised during that proceeding.

## ANALYSIS

We review a summary denial of postconviction relief for an abuse of discretion and will not reverse the district court unless it erred in its application of the law or made factual findings that were clearly erroneous. *Andersen v. State*, 913 N.W.2d 417, 422 (Minn. 2018). "Although doubts about whether to conduct an evidentiary hearing are resolved in favor of the petitioner," a district court may summarily deny the petition

6

without holding an evidentiary hearing when "the petitioner alleges facts that, if true, are legally insufficient to grant the requested relief." *State v. Sardina-Padilla*, 7 N.W.3d 585, 602–03 (Minn. 2024) (citation omitted) (internal quotation marks omitted). "If, taking the facts alleged in the light most favorable to the petitioner, the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief, the [district] court may dismiss the petition without an evidentiary hearing." *Fox v. State*, 913 N.W.2d 429, 433 (Minn. 2018) (citation omitted) (internal quotation marks omitted). *See* Minn. Stat. § 590.04, subd. 1 (2024)).

When, as here, a criminal defendant has had a direct appeal, "all claims raised in the direct appeal and all claims that were known *or should have been known* but were not raised in the direct appeal are procedurally barred." *Colbert v. State*, 870 N.W.2d 616, 626 (Minn. 2015) (emphasis in original). This principle is often referred to as the *Knaffla* rule because it is rooted in our decision in *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). For unraised claims, there are two exceptions to the *Knaffla* procedural bar: "(1) if a novel legal issue is presented; or (2) if the interests of justice require review." *Gilbert v. State*, 2 N.W.3d 483, 487 (Minn. 2024).

In Ezeka's appeal from the denial of postconviction relief, he has abandoned some of the claims he raised in his postconviction petition, including his constitutional challenge to the Minnesota Government Data Practices Act. *See* Minn. Stat. ch. 13 (2022). The claims that remain fall into three categories: (1) legal claims based on alleged new evidence; (2) ineffective assistance of trial counsel; and (3) ineffective assistance of appellate counsel. We consider the claims in each of these categories below.

A.

In his postconviction petition, Ezeka asserted several claims based on evidence that was allegedly unavailable to him at the time of his trial and direct appeal. When raised in a timely filed postconviction petition, newly discovered evidence claims are governed by the four-prong test announced in *Rainer v. State*, 566 N.W.2d 692, 695 (Minn. 1997). *Caldwell v. State*, 976 N.W.2d 131, 138 n.8 (Minn. 2022). To be entitled to an evidentiary hearing on a timely filed claim of newly discovered evidence, "a petitioner must allege facts that, if proven by a fair preponderance of the evidence, would satisfy all four prongs [of the test announced in] *Rainer*." *Tichich v. State*, 4 N.W.3d 114, 121 (Minn. 2024) (citation omitted) (internal quotation marks omitted). Under the *Rainer* test, the petitioner must prove the following:

(1) that the evidence was not known to the defendant or his/her counsel at the time of trial;
(2) that the evidence could not have been discovered through due diligence before trial;
(3) that the evidence is not cumulative, impeaching, or doubtful; and
(4) that the evidence would probably produce an acquittal or a more favorable result.

*Rainer*, 566 N.W.2d at 695. A district court need not hold an evidentiary hearing when the facts alleged, if true, are legally insufficient to entitle the petitioner to the requested relief. *Bobo v. State*, 820 N.W.2d 511, 516 (Minn. 2012).

8

1.

Ezeka first argues that newly discovered evidence—a Minnesota Department of Human Rights (MDHR) report,[1] a United States Department of Justice (DOJ) report,[2] a news article concerning the police killing of an arrestee in an unrelated incident,[3] a law journal article,[4] filings and decisions from unrelated criminal cases,[5] records concerning the misconduct of MPD Officer J.N. (a witness at Ezeka's trial),[6] and Facebook activity by

---

[1] The MDHR report was published on April 27, 2022, and was not available to Ezeka at trial or at the time of his direct appeal. The MDHR report's overarching finding was that "there is probable cause that the City [of Minneapolis] and MPD engage in a pattern or practice of race discrimination." It also found that "[p]olice misconduct complaints . . . are inadequately investigated" and "[a]s a result, officers who have engaged in misconduct are often not appropriately disciplined."

[2] The DOJ report was published on June 16, 2023, and was not available to Ezeka at trial or at the time of his direct appeal. The DOJ report found that the MPD "unlawfully discriminates against Black and Native American people when enforcing the law."

[3] The news article concerning the police killing of arrestee J.C. was published on March 30, 2016, and was available to Ezeka at the time of his trial and direct appeal.

[4] The article from the Minnesota Journal of Law and Inequality was published in March 2021 and was not available to Ezeka at trial or at the time of his direct appeal.

[5] The legal filings and decisions concerning unrelated criminal cases included copies of complaints, sentencing orders, and news coverage, some of which were not available to Ezeka at trial or at the time of his direct appeal.

[6] The records regarding Officer J.N.'s misconduct were from 2013 and earlier, and reported that he took Jell-O shots at a bar without paying for them and attempted to abuse his position as an officer during the same incident. These records existed before Ezeka's trial.

another Minneapolis police officer[7]—show that Ezeka was "invidiously discriminated against by Minneapolis police officers and/or the HCAO during their investigation and prosecution." According to Ezeka, this discrimination violated his right to equal protection under the federal and state constitutions. Ezeka acknowledges that the statistical data described in the newly discovered evidence is insufficient by itself to establish a discriminatory purpose under the equal protection clauses of the federal and state constitutions. *See McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *Nunn v. State*, 868 N.W.2d 230, 233–34 (Minn. 2015). And Ezeka further acknowledges that none of the facts alleged in the newly discovered evidence involve conduct that was directed toward him personally or committed in connection with the police investigation or prosecution of his case. Nevertheless, Ezeka claims that he had a right to a postconviction evidentiary hearing where he would have asked the MDHR and DOJ investigators "whether any of the data leading to their conclusions arose from [Ezeka's] case files."

We conclude that the district court did not abuse its discretion in determining that the facts alleged in support of Ezeka's equal protection claim, even if proven by a fair preponderance of the evidence, failed to satisfy the fourth prong of the *Rainer* test—which requires a petitioner to prove that the new evidence would "probably produce an acquittal

---

[7]     The submitted evidence was screenshots of Facebook activity by MPD Officer T.C.—who has no connection to Ezeka's case—including Officer T.C.'s 2017 comment regarding a post about Ezeka's case. This evidence was likely available to Ezeka at the time of his trial and direct appeal.

10

or a more favorable result."[8]  *Rainer*, 566 N.W.2d at 695.  The new evidence that Ezeka presented in support of his postconviction petition may show that the MPD engaged in general discriminatory practices, but none of the information directly concerns Ezeka or his case.  Any general discrimination by the MPD or the HCAO would not have impacted the result of Ezeka's trial.  Ezeka's defense at trial was not that he was wrongly targeted by the police or prosecution.  Instead, his defense was that when he shot and killed Beeks, he did so without premeditation or the intent to kill.  Ezeka does not explain how evidence of general racial discrimination would have affected the jury's decision regarding his state of mind at the time of the killing.  And although Ezeka's brief suggests that racial discrimination by the MPD impacted his decision to confess, he does not allege that his confession was false or explain how discrimination produced his confession.  Thus, even if the facts alleged in the newly discovered evidence were proven by a preponderance of the evidence at an evidentiary hearing, they would not produce a more favorable outcome as required under the *Rainer* test for new evidence.

---

[8]     Ezeka argues that the postconviction court erred in applying the *Rainer* test for newly discovered evidence and that we should instead apply the test from *State v. Warren*. 592 N.W.2d 440, 450 (Minn. 1999) (requiring "(1) that the evidence was not known to [the defendant], (2) that his failure to learn of it before trial was not due to the lack of diligence, (3) that the evidence is material * * *, and (4) that the evidence will probably produce either an acquittal at a retrial or results more favorable to the petitioner" (alteration in original) (citation omitted) (internal quotation marks omitted)).  Although *Warren* uses different language in identifying the third element of the test, we have stated that the *Rainer* and *Warren* tests are functionally equivalent.  *See State v. Caldwell*, 803 N.W.2d 373, 389 n.6 (Minn. 2011) (explaining that the truncated recitation of the test in *Warren* "does not remove 'not cumulative, impeaching, or doubtful' from what must be proved").  Moreover, the new evidence that Ezeka presented does not satisfy the fourth element of *Rainer* or *Warren*.

11

As to Ezeka's claim that he had a right to use a postconviction evidentiary hearing as a means of deposing the MDHR and DOJ investigators to determine whether there was information that might cure the acknowledged deficiencies in his equal protection claim, we have previously held that the postconviction remedy provided under Minnesota statutes was "not devised . . . to permit a petitioner to embark upon unlimited and undefined discovery proceedings." *Thompson v. State*, 170 N.W.2d 101, 104 (Minn. 1969). In the absence of any specific allegations that MDHR and DOJ investigators relied on data from Ezeka's case files to reach their conclusions, we conclude that the district court did not abuse its discretion in rejecting Ezeka's claim that he had a right to use a postconviction evidentiary hearing to depose the MDHR and DOJ investigators.[9]

Furthermore, Ezeka does not clarify the remedy that he seeks for the alleged equal protection violation. And he cites no authority for the proposition that a new trial is warranted when there is a general allegation that racial discrimination exists within a police department or prosecutor's office.

Because the facts alleged to support Ezeka's equal protection claim, even if proven by a preponderance of the evidence at an evidentiary hearing, were legally insufficient to

---

[9]     Ezeka's reliance on *Bobo*, 820 N.W.2d at 519, to argue that he is entitled to an evidentiary hearing to discover presently unknown evidence is misplaced. In *Bobo*, the defendant *specifically alleged* that an alternative perpetrator had confessed. *Id.* We held that the defendant in *Bobo* was entitled to an evidentiary hearing because there was a possibility the alternative perpetrator "would *confirm* his alleged confession at [the] evidentiary hearing." *Id.* (emphasis added).

satisfy the *Rainer* test, the district court did not abuse its discretion in denying Ezeka's equal protection claim without a hearing.[10]

2.

Based largely on the same evidence that Ezeka alleged in support of his equal protection claim, he argues that the State's failure to turn over the evidence to the defense violated his constitutional right to due process. *See* U.S. Const., amend. XIV (providing a right to due process in criminal prosecutions). Ezeka's due process argument relies on the United States Supreme Court's decisions in *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). *Brady* addresses the prosecution's failure to turn over exculpatory evidence, holding that suppressing evidence that is "favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. And in *Giglio*, the Supreme Court extended the *Brady* rule to material evidence that could be used to impeach a witness's credibility. 405 U.S. at 154.

To establish a *Brady* due process violation, a defendant must show three elements: (1) the evidence is "favorable to the defendant because it would have been either exculpatory or impeaching"; (2) the evidence was "suppressed by the prosecution, intentionally or otherwise"; and (3) the evidence is "material—in other words, the absence of the evidence must have caused prejudice to the defendant." *Walen v. State*, 777 N.W.2d

---

[10] The postconviction court also concluded that Ezeka's equal protection claim is barred under the *Knaffla* rule. Because we conclude that the claim fails on the merits, we do not address this alternative analysis.

13

213, 216 (Minn. 2010). "Evidence is material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Pederson v. State*, 692 N.W.2d 452, 460 (Minn. 2005) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "A 'reasonable probability' is one that is 'sufficient to undermine confidence in the outcome.' " *Id.* (quoting *Bagley*, 473 U.S. at 682). We consider whether evidence is material under *Brady* de novo because this issue presents questions of law and fact. *Id.*

Ezeka argues that the prosecution's failure to disclose the discriminatory practices within the MPD and the HCAO violated *Brady*. *See Brady,* 373 U.S. at 87. The district court concluded that the evidence, even if proven by a fair preponderance of the evidence, was not material. Applying de novo review, we agree with the district court's determination.

Even if the jury had known about the alleged general discriminatory practices, there is no reasonable probability that the outcome of Ezeka's trial would have been different. At the trial, Ezeka challenged the State's evidence of his premeditation and intent to kill D.G. Beyond purely speculative assertions, Ezeka fails to explain how the evidence of discriminatory practices would have affected the jury's consideration of these issues. Thus, the district court did not abuse its discretion when it concluded that the evidence of discriminatory practices—even if proven by a fair preponderance of the evidence—was legally insufficient to satisfy the *Brady* materiality requirement.

Ezeka also argues that the prosecution should have disclosed the information about Officer J.N.'s disciplinary violation—taking Jell-O shots without paying and attempting to

14

abuse his position as a police officer at a bar—which Ezeka then could have used to impeach Officer J.N.'s credibility.[11] According to Ezeka, the prosecution's failure to disclose the disciplinary infraction violated his right to due process under the *Giglio* decision. *See Giglio*, 405 U.S. at 154.

We likewise conclude that the district court did not abuse its discretion in summarily denying this claim. The *Brady* decision applies when the prosecution fails to disclose impeaching evidence for a witness whose reliability "may well be determinative of guilt or innocence." *Pederson*, 692 N.W.2d at 460 (quoting *Giglio*, 405 U.S. at 154). To warrant a new trial under these circumstances, however, the evidence must be "material." *Id.* Impeachment evidence is material when there is "a reasonable probability that, had the evidence been disclosed . . . , the result of the proceeding would have been different." *Id.* (citation omitted) (internal quotation marks omitted).

The evidence concerning Officer J.N.'s disciplinary violation may have reflected on Officer J.N.'s credibility. But it was not material impeachment evidence when considered in the context of Ezeka's trial. Officer J.N. testified that he was one of the first officers called to the scene after Beeks was shot. He told the jury about his observations when he arrived. And he testified about the statement he took from Beeks's granddaughter. Ezeka's trial defense focused entirely on whether the state's evidence proved that he acted with premeditation and intent when he fired a gun at D.G. Officer J.N.'s testimony had no

---

[11] Ezeka also presented various unsubstantiated complaints against police officers and instances of misconduct that are unrelated to his case. We conclude that the district court did not err in determining that these complaints would not have been admissible at trial.

15

bearing on Ezeka's state of mind at the time of the shooting. Thus, there is no reasonable probability that impeaching Officer J.N.'s testimony with the evidence of his disciplinary violation would have changed the outcome of Ezeka's trial. We therefore agree with the district court that Ezeka's *Giglio* claim failed because, even if the facts alleged in the postconviction petition were proven by a fair preponderance of the evidence, they were legally insufficient to satisfy the materiality element of *Brady*.

There is no reasonable probability that the new evidence that Ezeka alleged in his postconviction petition, even if proven by a fair preponderance of the evidence, would have impacted the outcome of his trial. Accordingly, any failure of the prosecution to disclose the evidence did not violate Ezeka's due process rights. We therefore conclude that the district court did not abuse its discretion by summarily rejecting these claims.

3.

Ezeka's final claim based on alleged new evidence is that the district court erred at trial by denying his request for jury instructions on the lesser-included offenses of third-degree murder, Minn. Stat. § 609.195(a) (2016), and second-degree manslaughter, Minn. Stat. § 609.205, subd. 1 (2016). In support of this claim, Ezeka submitted an affidavit from one of the jurors who served at his trial. According to the juror's affidavit, the jurors were confused about the jury instructions and may have reached a different result if the district court had provided the lesser-included offense instructions that Ezeka requested.

The district court correctly determined that the juror's affidavit did not satisfy the requirements of newly discovered evidence because it was inadmissible in any proceeding

16

as a matter of law. *See Miles v. State*, 840 N.W.2d 195, 203 (Minn. 2013) (stating that the district court properly rejected a claim of newly discovered evidence because the evidence was substantively inadmissible). We have long held that "a jury's deliberations must remain inviolate and its verdict may not be reviewed or set aside on the basis of affidavits or testimony concerning that which transpired in the course of those deliberations." *Colbert*, 870 N.W.2d at 626; *see also State v. Domabyl*, 272 N.W.2d 745, 746 (Minn. 1978); *State v. Hoskins*, 193 N.W.2d 802, 812 (Minn. 1972). The Minnesota Rules of Evidence bar the admission of juror testimony or affidavits concerning "any matter or statement occurring during the course of the jury's deliberations" or "concerning the juror's mental processes in connection [with deliberations]," subject to a few exceptions. Minn. R. Evid. 606(b). None of those exceptions apply to the juror's statements in the affidavit. *See id.* (providing a limited list of exceptions to the general prohibition on juror testimony, including testimony regarding extraneous prejudicial information or outside influence on the jury's deliberations, testimony about threats of violence, evidence that a juror falsely answered voir dire questions to conceal bias, and testimony concerning errors in notating a verdict).

Moreover, we agree with the postconviction court that Ezeka cannot now raise a claim regarding the district court's denial of his requested jury instructions because this claim was known to him at the time of his direct appeal. Because Ezeka knew of the claim when he directly appealed his convictions to this court and failed to raise the claim in his direct appeal, the claim is now barred. *See Knaffla*, 243 N.W.2d at 741.

Finally, even if we were to consider the merits of Ezeka's claim that the district court erred in failing to instruct the jury on the offenses of third-degree murder and second-degree manslaughter, his claim would fail. That is because, setting aside the inadmissible affidavit of the individual juror, the record shows that Ezeka was not prejudiced by the district court's ruling. A defendant must show that any error in the court's failure to give requested instructions caused prejudice. *State v. Harris*, 713 N.W.2d 844, 850 (Minn. 2006). Given the jury's guilty verdict for first-degree premeditated murder, Ezeka cannot make that showing. We have held that, when a jury has found a defendant guilty of first-degree premeditated murder, rather than the lesser-included offense of second-degree intentional murder, the district court's failure to instruct on additional lesser-included offenses for causing the death was not prejudicial. That is because the jury's verdict itself—finding that the defendant caused the death with premeditation and intent while rejecting the theory that the killing was intentional but without premeditation—demonstrated that the jury would not have found the defendant guilty of any other lesser-included offenses for causing the death. *See State v. Dahlin*, 695 N.W.2d 588, 599 (Minn. 2005) (citing cases). Ezeka's jury *was* instructed on the lesser-included offense of second-degree intentional murder and nonetheless found Ezeka guilty of first-degree premeditated murder. This verdict shows that the jury found, beyond a reasonable doubt, that Ezeka premeditated and intended the killing. It also indicates that the jury would not have found Ezeka guilty of any other lesser-included offenses for the death that he caused. Thus, the district court's decision not to instruct on the offenses of third-degree murder and second-degree manslaughter did not prejudice Ezeka.

18

Ezeka's claim that the district court erred in denying his request for jury instructions on lesser-included offenses fails as a matter of law because the juror's affidavit is inadmissible evidence, the claim is procedurally barred, and the claim lacks merit. Accordingly, the district court did not abuse its discretion in rejecting the claim.

B.

Next, we turn to Ezeka's claims concerning the performance of his trial attorney. Ezeka contends that the district court abused its discretion in denying his claims of ineffective assistance of counsel without an evidentiary hearing. "[W]e review the denial of postconviction relief based on a claim of ineffective assistance of counsel de novo because such claims involve mixed questions of law and facts." *Sardina-Padilla*, 7 N.W.3d at 602.

"[T]o be entitled to an evidentiary hearing on a claim of ineffective assistance of counsel, the appellant must allege facts that, if proven by a fair preponderance of the evidence, would satisfy the two-prong test set forth in *Strickland v. Washington* . . . ." *Id.* at 603 (citing 466 U.S. 668, 687 (1984)) (citation omitted) (internal quotation marks omitted). Under the *Strickland* test, the petitioner must show "(1) that his counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that the outcome would have been different but for counsel's errors." *Id.* (citation omitted) (internal quotation marks omitted). "If one prong is not met, we need not consider the other." *Id.*

"The objective standard of reasonableness is defined as representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney

19

would perform under similar circumstances." *State v. Vang*, 847 N.W.2d 248, 266 (Minn. 2014) (citation omitted) (internal quotation marks omitted). We begin with "a 'strong presumption' that counsel's performance was objectively reasonable." *Griffin v. State*, 883 N.W.2d 282, 287 (Minn. 2016).

1.

Ezeka argues that his trial counsel provided deficient representation because counsel failed to argue, in support of his motion to suppress Ezeka's confession, that the confession was obtained in violation of the Sixth Amendment to the United States Constitution and Article I, Section 6, of the Minnesota Constitution. These constitutional provisions guarantee the right to counsel during "critical stages" of proceedings after a criminal prosecution has been initiated. *State v. Zaldivar-Proenza*, 957 N.W.2d 93, 96–97 (Minn. 2021) (citing Minn. Const. art. I, § 6; U.S. Const. amend. VI); *see also State v. Ronnebaum*, 449 N.W.2d 722, 724 (Minn. 1990) (stating that the initiation of the criminal prosecution is "usually [marked] by the filing of the complaint"). An interrogation occurring after the complaint has been filed is considered a critical proceeding. *State v. Ware*, 856 N.W.2d 719, 725 (Minn. 2014).

The district court concluded that, even if proven by a fair preponderance of the evidence, the facts alleged in support of this claim would fail to establish either prong of the test for ineffective assistance of counsel. We conclude that Ezeka's claim fails on the first prong of *Strickland*.

In Ezeka's direct appeal, we determined that he validly waived his right to counsel under the Fifth Amendment and Article I, Section 7, of the Minnesota Constitution when

he made his post-*Miranda* confession in January 2017. *Ezeka*, 946 N.W.2d at 403–07. And we previously have recognized that "the validity of a waiver of the right to counsel under either the Sixth or Fifth Amendment [of the United States Constitution] is judged by essentially the same standard." *State v. Clark*, 738 N.W.2d 316, 337 (Minn. 2007) (citing *State v. Kivimaki*, 345 N.W.2d 759, 763 (Minn. 1984)). Given this precedent, Ezeka has not shown that, in failing to challenge his January 2017 confession under the Sixth Amendment and Article I, Section 6, of the Minnesota Constitution, his trial counsel's performance was objectively unreasonable. Moreover, Ezeka's brief offers no principled basis for us to deviate from our precedent. *See State v. McMurray*, 860 N.W.2d 686, 690 (Minn. 2015) (outlining bases for deviating from the United States Supreme Court's interpretation of the federal constitution in our interpretation of the Minnesota Constitution). Beyond speculation, Ezeka does not explain how he could have prevailed in a challenge to his confession under the Sixth Amendment and Article I, Section 6, of the Minnesota Constitution.

Ezeka did not allege any facts that, if proven by a fair preponderance of the evidence, would show that his trial counsel's failure to pursue suppression of his confession under his alternative theory was objectively unreasonable. Thus, the district court did not abuse its discretion in denying his postconviction claim on this basis.

When a petitioner fails to establish one prong of the *Strickland* test, a court need not consider the other prong. *Sardina-Padilla*, 7 N.W.3d at 603. Because the facts alleged by Ezeka are legally insufficient to satisfy the performance prong of *Strickland*, we do not address the prejudice prong of the test.

2.

Ezeka also argues that his trial counsel provided ineffective assistance of counsel by failing to search for the new evidence that gave rise to the previously discussed *Brady* and *Giglio* due process claims. The district court determined that "[u]nder the circumstances, a failure to thoroughly investigate various complaints against testifying law enforcement witnesses was a reasonable exercise of professional judgment." And it further determined that "the evidence against Ezeka was so strong that any errors did not prejudice him."

We have already determined that none of the new evidence that Ezeka alleges would have changed the outcome of his trial given Ezeka's trial theory. Thus, Ezeka cannot establish that he was prejudiced by counsel's failure to discover the evidence. We conclude that the district court did not abuse its discretion in rejecting Ezeka's claim based on trial counsel's failure to investigate because Ezeka has not alleged any facts that, if proven by a fair preponderance of the evidence, would satisfy the prejudice prong of *Strickland*.

3.

Ezeka argues that his trial counsel was ineffective for failing to request self-defense and defense-of-others jury instructions. The district court determined that "Ezeka did not have the requisite basis to establish a self-defense or defense of others claim," and therefore trial counsel's failure to request the jury instructions did not constitute ineffective assistance.

To succeed on a self-defense or defense-of-others claim, Ezeka would have had to establish

22

(1) [t]he absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he [or another] was in imminent danger of . . . great bodily harm; (3) the existence of reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat to avoid the danger.[12]

*State v. Blevins*, 10 N.W.3d 29, 35 (Minn. 2024) (alteration in original) (emphasis removed) (quoting *State v. Basting*, 572 N.W.2d 281, 285 (Minn. 1997)). *See* Minn. Stat. § 609.06, subd. 1(3) (2016).

At Ezeka's trial, the evidence showed that Ezeka fired nine shots at a moving vehicle from across an intersection. There was no evidence that any shots were fired toward Ezeka, his family, or his home. Ezeka was the first and only aggressor in the incident. Given these factual circumstances, which would not support the affirmative defenses of self-defense or defense-of-others, it was not objectively unreasonable for trial counsel to forgo these defenses. And given the trial evidence, these defenses likely would have failed, even if pursued. Thus, the postconviction court did not err in rejecting Ezeka's claim of ineffective assistance of counsel as a matter of law based on trial counsel's failure to pursue these affirmative defenses.

In sum, we conclude that the district court correctly determined that Ezeka's claims of ineffective assistance of trial counsel failed as a matter of law. The district court did not abuse its discretion by summarily rejecting these claims without an evidentiary hearing.

---

[12] When acting in defense of another, a defendant does not have a duty to retreat. *State v. Valdez*, 12 N.W.3d 191, 198 (Minn. 2024). Instead, the defendant "must subjectively believe that the person in peril has no reasonable possibility of safe retreat, and that belief must be objectively reasonable based on the information available to the defendant at the time that they use force to defend the person in peril." *Id.* at 199.

23

## C.

Finally, Ezeka argued in his postconviction petition that he received ineffective assistance of appellate counsel because his appellate counsel failed to challenge the performance of his trial counsel. The district court rejected this argument, determining that, because Ezeka's claims of ineffective assistance of trial counsel were not meritorious, Ezeka's appellate counsel reasonably decided not to pursue them, and Ezeka was not prejudiced by appellate counsel's decisions regarding those claims. In other words, the district court determined that the facts alleged by Ezeka, even if proven by a fair preponderance of the evidence, were legally insufficient to satisfy either *Strickland* prong.

We agree. "When an ineffective assistance of appellate counsel claim is based on appellate counsel's failure to raise an ineffective assistance of trial counsel claim, the [petitioner] must first show that trial counsel was ineffective." *Fields v. State*, 733 N.W.2d 465, 468 (Minn. 2007) (citation omitted). Ezeka argues that he "adequately established ineffective-assistance-of-trial-counsel" and "[t]hus, the court abused its discretion in holding [he] failed to establish ineffective-assistance-of-appellate counsel." But we have determined that Ezeka's ineffective-assistance-of-trial-counsel claims fail as a matter of law. Thus, his claims of ineffective assistance of appellate counsel predicated on the performance of trial counsel likewise fail. The district court did not abuse its discretion in summarily rejecting those claims.[13]

---

[13] Ezeka also argued in his postconviction petition that appellate counsel provided deficient representation by failing to argue on appeal that the district court erred in denying his requests for jury instructions on the lesser-included offenses of third-degree murder and

## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court.

Affirmed.

---

second-degree manslaughter. Although Ezeka appears to have abandoned this argument before this court, we have already determined that jury instructions for these lesser-included offenses would not have changed the outcome of Ezeka's trial. Thus, appellate counsel's decision not to raise the issue on appeal was not objectively unreasonable and did not constitute ineffective assistance of counsel.